368 A.2d 1273
COMMONWEALTH of Pennsylvania, Appellant,
v.
Andrew MILLHOUSE.

Supreme Court of Pennsylvania.
Argued June 22, 1976.
Decided Jan. 28, 1977.
Reargument Denied Feb. 14, 1977.

513

514

Steven H. Goldblatt, Asst. Dist. Atty., Chief, Appeals Div., for appellant.

Needleman, Needleman, Tabb & Eisman, Gerald A. Stein, Philadelphia, for appellee.

Stephen J. McEwen, Jr., Upper Darby, for Pa. District Attorneys' Assn.

Before JONES, C. J., and EAGEN, O'BRIEN, ROBERTS, POMEROY, NIX and MANDERINO, JJ.

## OPINION OF THE COURT

O'BRIEN, Justice.

This appeal by the Commonwealth arises from the order of Superior Court which discharged the appellee, Andrew Millhouse. The basis of the discharge order was a violation of Pennsylvania Rule of Criminal Procedure 1100—prompt trial. The facts surrounding this appeal are as follows.

On January 3, 1974, appellee, Andrew Millhouse, was indicted on two counts of malfeasance, misfeasance and nonfeasance in connection with his duties as a cigarette tax agent for the Commonwealth. The appellee was also indicted for four counts of perjury, four counts of false swearing, two counts of miscellaneous fraud, and one count of burglary, larceny, receiving stolen goods and conspiracy.

On January 15, 1974, a preliminary arraignment and bail hearing were scheduled but both were continued until February 6, 1974.

On February 6, 1974, the appellee, unrepresented by counsel, was arraigned. On March 12, 20, April 15, 18, 25 and May 1, 1974, the case was listed for preliminary proceedings. On March 12, 1974, a pretrial proceeding was deferred until March 20, 1974, when appellee again was unrepresented by counsel. On April 15, 18, 25 and May 1, 1974 scheduled preliminary proceedings could not be held because appellee had not retained counsel. On May 3, 1974, the court below admonished the appellee that this was the third time he had appeared before the court without defense counsel.[1] The appellee stated that difficulty in agreeing on a fee was the reason that he remained unrepresented, but he assured the court that he had spoken with several attorneys and that he was confident he could arrange to retain counsel. The court then postponed until May 13 any further action on the appellee's case until he could retain counsel.[2] On May 13, 1974, the appellee failed to appear before the court below and Judge Blake issued a bench warrant for his arrest. On May 28, 1974, Abraham Needleman, Esquire, entered his appearance on behalf of the appellee, at which time Judge Blake withdrew the bench warrant.

On June 3, 1974, defense counsel requested the court below that he be allowed to join in the discovery motion of one of the appellee's co-defendants, Melvin Shelton. On March 12, 1974, Judge Blake granted a discovery motion by Shelton pertaining to materials of the Special Investigating Grand Jury. Subsequently it was discovered that on January 5, 1974, Judge Harry Takiff, the presid-

1. The chronological record does not reveal the reasons for the additional listings.

2. The court below concluded that the appellee did not meet the financial requirement that would allow representation by the Public Defender's Office of Philadelphia County.

ing judge of the Grand Jury, had impounded all of the records of that Grand Jury. On April 29, 1974, Judge Blake ordered all parties to apply to Judge Takiff for clarification of the conflicting orders. On July 3, 1974, Judge Takiff resolved the conflict by allowing the co-defendants, Millhouse and Shelton, access to their own testimony before the grand jury but denying further discovery.

The case was assigned to Judge Herbert Cain for trial in June of 1974. On October 1, 1974, the judge recused himself and on October 4, 1974, the case was reassigned to Judge William Porter and a trial date of December 2, 1974, was set.

On November 1, 1974, appellee's counsel filed a motion to dismiss the indictments because of a violation of Pa. R.Crim.P. 203(c), failure to give adequate notice of the indictment, and also to discharge appellee because of a violation of Pa.R.Crim.P. 1100, failure to grant appellee a speedy trial.

On November 29, 1974, the motion to quash the indictment was denied by Judge William Porter, and on December 2, 1974, Judge Stanley Greenberg denied the speedy trial motion but certified that his order was appropriate for interlocutory review. Appellee filed an appeal to Superior Court. On February 24, 1975, Judge Porter reconsidered the motion to quash the indictments and reversed his November 29, 1974 order and quashed the indictments. The Commonwealth appealed that order and both appeals were consolidated for disposition before the Superior Court.

On March 29, 1976, Superior Court held that appellee, Andrew Millhouse, was denied his right to a speedy trial in violation of Pa.R.Crim.P. 1100. The Superior Court did not reach the merits of the Commonwealth's appeal of Judge Porter's order which quashed the indictments against Millhouse; however, the Superior Court

"quashed" the Commonwealth's appeal.[3] On May 5, 1976, this court granted the Commonwealth's petition for allowance of appeal.

The Commonwealth argues that the Superior Court erred in failing to exclude that period of delay resulting from the appellee being unrepresented by counsel from the computation under Rule 1100(a)(1) (270 day rule). We agree.

Pa.R.Crim.P. 1100(d)(1) provides:

"(d) In determining the period for commencement of trial, there shall be excluded therefrom such period of delay at any stage of the proceedings as results from:

"(1) the unavailability of the defendant or his attorney;"

■ The actual "period of delay" at any stage of the proceedings attributable to the "unavailability of the defendant or his attorney" is an automatic exclusion from the time limits of either Pa.R.Crim.P. 1100(a)(1)—270 day rule or (a)(3)—180 day rule. See *Commonwealth v. Shelton*, 469 Pa. 8, 364 A.2d 694 (1976).

■ We are of the opinion that a defendant who has not waived his right to counsel is "unavailable" when that defendant appears for proceedings in connection with his case without defense counsel and such defendant is financially capable of retaining counsel.[4] If the "unavailability" results in an actual delay in the proceedings, that delay is automatically excluded. The record in the instant case reveals that the appellee, while financially

---

3. Order of Superior Court reads:
   "Therefore, the order of the lower court in appeal number 718 is reversed and appellant is discharged. Because appellant is hereby discharged, we do not reach the merits of appeal No. 954 and it is therefore quashed."

4. We express no opinion relevant to issue of unavailablity when the defendant is indigent and qualified for court-appointed counsel or the Public Defender's Office.

able to retain private defense counsel, was unrepresented by counsel from February 6, 1974, the date of the preliminary arraignment, until May 28, 1974, the date that Abraham Needleman, Esquire, entered his appearance on his behalf. The preliminary arraignment, however, was held despite the absence of defense counsel and thus, no actual delay resulted. Although the record is inadequate, it is clear that the first actual delay resulting from appellee's "unavailability" occurred on March 20, 1974. On that date, the proceedings were delayed until appellee retained counsel.

Appellee's testimony on May 3, 1974 indicates that the sole reason for the delay in the proceedings was the absence of defense counsel because of the appellee's inability to agree on a suitable fee arrangement.

■ We are therefore of the opinion that the 69 days from March 20, 1974, until May 28, 1974, the date that defense counsel filed his appearance on behalf of appellee, is excluded from the computation of the 270 day rule and the order of the Superior Court at No. 718 October Term, 1975 is reversed.[5]

Given our resolution of the instant appeal in favor of the Commonwealth, the case must be remanded to the Superior Court to consider the merits of the Common-

5. Appellee also contends that this 69 day period should not be excluded because other, subsequent delays would have prevented the case from reaching trial within the 270 day period, even if the appellee had been available for the entire 69 day period. We cannot accept this argument. Rule 1100(d)(1) requires the exclusion of any delay caused by the unavailability of the defendant "at any stage of the proceedings." Thus, if the unavailability of the defendant causes a delay at an initial stage, the period of the delay is excluded from the period set by Rule 1100, regardless of what happens later. To determine the period to be excluded, the courts need only determine the period of the initial delay.

We can only speculate as to what would have happened if there had been no initial delay. Appellee's trial was set for the same date as his co-defendant's, but we cannot be certain that appellee's unavailability did not affect the trial date set for his co-defendant's, or that appellee's case might not have been severed and tried earlier. The computation of time to be excluded cannot be based on speculation whether later delays would have prevented the trial from being called within 270 days.

wealth's appeal at No. 954 October Term, 1975 dealing with the quashing of the indictments against the appellee, Andrew Millhouse.

Order of Superior Court at No. 718 October Term, 1975 is reversed and the record is remanded to that court for consideration and disposition of the Commonwealth of Pennsylvania's appeal at Superior Court No. 954 October Term, 1975.

NIX, J., filed a concurring and dissenting opinion.

MANDERINO, J., filed a concurring opinion.

NIX, Justice, concurring and dissenting.

In the instant action cross appeals were filed in the Superior Court. The Commonwealth filed an appeal from the February 24, 1975 order of Judge Porter, reversing his earlier ruling and quashing the indictments because of an asserted violation of Pa.R.Crim.P. 203(c). The appellee, after a certification from the court below that the order was appropriate for interlocutory review, filed an appeal challenging Judge Greenberg's denial of his motion for discharge on the basis of a denial of speedy trial. Efficient administration, judicial economy and logic should have suggested the prior disposition of the merits of the appeal of the Commonwealth relating to the validity of the order quashing the indictments.[1] Obviously, a decision dismissing the indictments would necessarily moot the speedy trial claim and eliminate the necessity of reaching the merits of the issues presented therein. Regrettably, this course was not selected by the Superior Court and the majority today has compounded this unwise approach by also discussing the merits of the asserted Rule 1100 violation without first considering the validity of the 203(c) claim upon which it must necessarily depend.

1. Although the appeal of the appellee was lodged first, the Superior Court consolidated the later appeal filed by the Commonwealth and was therefore at liberty to determine which issue to decide first.

I am aware that even though the quashing of the indictments might be sustained on the appellate level, the Commonwealth would not be precluded from seeking reindictments for the same charges and thereby revitalize appellee's speedy trial claim. However, in such an event, the posture of that claim would be materially different from that which has been presently presented because of the additional time that would then have been consumed through the re-indictment process. We are thus placed in the anomalous position of having first decided an issue which will be simply advisory in the event it is determined that Judge Porter's order quashing the indictments is to be sustained.

In my judgment the cause should have been remanded to the Superior Court for a resolution on the merits of the appeal lodged by the Commonwealth [2] before reaching the merits of the alleged Rule 1100 violation.[3]

MANDERINO, Justice, concurring.

Although I concur in the result reached by the majority, I do not agree that Section (d) (1) of Rule 1100, Pa. R.Crim.P. is controlling. Section (d) (1) provides:

"(d) In determining the period for commencement of trial, there shall be excluded therefrom such period of delay at any stage of the proceedings as results from:

(1) the *unavailability* of the *defendant* or *his attorney*." (Emphasis added.)

**2.** As noted by the majority (p. 1275), the Superior Court quashed the Commonwealth appeal. From the language of the order it is clear that the Superior Court did not consider the merits of that appeal and although not expressly stated, the order implies that the decision to quash was not as a result of a procedural defect in the appeal but rather in view of its decision as to appellee's appeal. If however, there was a procedural basis for the Superior Court's decision to quash, then that basis should have been articulated, and if this Court determined that review was appropriate, the propriety of the order to quash should have been addressed before a consideration of the Rule 1100 claim.

**3.** I do not suggest any view as to the merits of appellee's appeal.

In construing the phrase "unavailability of the defendant" the majority opinion concludes: "We are of the opinion that a defendant . . . is 'unavailable' when that defendant appears for proceedings in connection with his case without defense counsel and such defendant is financially capable of retaining counsel." If he is present in court without any attorney the court concludes that he is "unavailable." To say that a defendant is unavailable even though he is standing in front of the court is ludicrous.

Rather than reaching such a strained construction of the English language, I would conclude that on the basis of the record before us Section (d)(2) of Rule 1100, P. R.Crim.P., is controlling. Section (d)(2) provides:

"(d) In determining the period for commencement of trial, there shall be excluded therefrom such period of delay at any stage of the proceedings as results from:

(2) any *continuance* in excess of thirty (30) days granted at the request of the defendant or his attorney, provided that only the period beyond the thirtieth (30th) day shall be so excluded." (Emphasis added.)

In the record (7a) the following discussion took place:

"THE COURT: Have Mr. Millhouse come to the Bar of the Court.

Mr. Millhouse, this is about at least the second or perhaps the third time you've been back before me and you appreciate that I cannot permit this matter to drag on. I'm not going to permit it.

I interrogated you briefly on your resources and I concluded that the public ought not to furnish you an attorney; that you should be able to provide private counsel. My recollection is that Mr. Moran came in and *asked for a delay*. I assumed that you and he were going to work out some arrangement. The latest word we have from Mr. Moran is that that never developed.

THE DEFENDANT: That's true.

THE COURT: Now, here we are, Mr. Millhouse. What's the situation?

THE DEFENDANT: I was unable, as you apparently conferred with Mr. Moran, I was unable to meet financial commitments. I will assure you that in the next three days I will have an attorney, sir." (Emphasis added.)

Since the appellee on several occasions did not want to proceed without an attorney, the continuances were properly chargeable to him under Section (d)(2) of Rule 1100.

Accordingly, the 69 day delay between March 20, 1974 and May 28, 1974, is attributable to appellee, however, because of Section (d)(2) of Rule 1100, he is not charged with the first 30 days. The remaining 39 days (69 days minus 30 days), are chargeable to appellee and properly excluded from the computation of the 270 day time period. So calculated, appellee's motion to dismiss pursuant to Rule 1100 was made 263 days after indictment. (January 3, 1974 to November 1, 1974, equals 302 days, minus 39 days delay attributable to appellee, equals 263 days.) At the time the motion to dismiss was brought. (November 1, 1974) appellee could still have been tried within the period specified by Rule 1100, and his motion to dismiss was therefore properly denied.