382 A.2d 1215

**COMMONWEALTH of Pennsylvania**

v.

**Leslie EARP, Appellant (two cases).**

Supreme Court of Pennsylvania.

Submitted Oct. 11, 1976.

Reassigned Oct. 24, 1977.

Decided Jan. 26, 1978.

Rehearing Denied March 1, 1978.

Stephen G. Young, Philadelphia, for appellant.

F. Emmett Fitzpatrick, Dist. Atty., Steven H. Goldblatt, Asst. Dist. Atty., Chief, Appeals Div., for appellee.

Before EAGEN, C. J., and O'BRIEN, ROBERTS, POMEROY, NIX, MANDERINO and LARSEN, JJ.

## OPINION

ROBERTS, Justice.

This appeal presents the issue of whether an accused not brought to trial as required by Pa.R.Crim.P. 1100 on charges arising out of a criminal transaction may, under Pa.R. Crim.P. 1100, be later brought to trial on other charges arising out of the same criminal transaction.[1]  We hold that he cannot.[2]

## I

On July 28, 1974, appellant Leslie Earp was arrested and charged with murder, conspiracy, and several other offenses

1.  We hear this appeal pursuant to the Appellate Court Jurisdiction Act of 1970, Act of July 31, 1970, P.L. 673, art. II, § 202(1), 17 P.S. § 211.202(1) (Supp.1977).

2.  Appellant also asserts: (1) the verdict was against the evidence; (2) the verdict was against the weight of the evidence; (3) the homicide calendar judge erred in refusing to quash the murder and conspiracy indictments although they were returned at a time when a stay of all proceedings relating to appellant's case was in effect; (4) Earp's second trial violated his right not to be placed twice in jeopardy; (5) the suppression judge erred in denying appellant's motion that all of the well pleaded facts in his two pre-trial applications to suppress evidence be deemed admitted because the Commonwealth failed to answer the applications within the time limits prescribed by Pa.R.Crim.P. 308(a); (6) the suppression judge erroneously held that appellant's arrest on July 28, 1974, was supported by probable cause; (7) the suppression judge erred in refusing to suppress identification testimony of three Commonwealth witnesses; (8) the trial court erred in refusing to charge that the testimony of the Commonwealth's alleged eyewitnesses be received with caution because these witnesses were young juveniles; and (9) the trial court erred in refusing to alter a portion of its charge relating to the testimony of a defense witness.  Our disposition makes it unnecessary to reach any of these issues.

in connection with the shooting death of Robert Davis.[3]  On August 22, 1974, a certification hearing was held on all charges except murder.  Appellant, who was sixteen years old at the time of arrest, was certified at the hearing as an adult on all charges.

At a preliminary hearing on the murder and conspiracy charges held on September 4, 1974, these charges were dismissed because of the Commonwealth's failure to establish a prima facie case against appellant as required by Pa.R.Crim.P. 141(d).  Despite dismissal of these charges, appellant was held continuously on the other offenses.

On February 4, 1975, a warrant was issued for the arrest of appellant for murder and conspiracy in connection with the same killing.  Even though appellant since his arrest on July 28, 1974 had been continuously incarcerated, it was not until February 10, 1975, that appellant was arrested again. On April 16, 1975, 262 days after the first arrest, appellant filed a motion to dismiss all charges, contending that the Commonwealth had failed to comply with Pa.R.Crim.P. 1100. Rule 1100 requires the Commonwealth to bring a case to trial within 180 days of the filing of the criminal complaint against an accused.  The calendar judge granted the motion except on the murder and conspiracy charges, reasoning that the arrest of February 10 on these two charges was the relevant date for measuring the Commonwealth's compliance with Rule 1100 regarding these two charges.  On August 11, 1975, 379 days after the first charges were filed, trial commenced, but ended in a mistrial.  On December 8, 1975, a second trial began, and a jury found appellant guilty of murder of the first degree and conspiracy.  Post-verdict motions, raising the Commonwealth's failure to comply with Rule 1100, were denied, appellant was sentenced to life imprisonment, and this appeal followed.

## II

Pa.R.Crim.P. 1100(a)(2) provides:

---

3.  The other offenses included possession of instruments of crime, possession of offensive weapons, aggravated assault, simple assault, and recklessly endangering another person.

"Trial in a court case in which a written complaint is filed against the defendant after June 30, 1974 shall commence no later than one hundred eighty (180) days from the date on which the complaint is filed."

Rule 1100 was promulgated to protect not only the right of the accused to a speedy trial, but also the interest of society in the prompt disposition of criminal litigation. See *Commonwealth v. Hamilton*, 449 Pa. 297, 297 A.2d 127 (1972). As stated in the Commentary to the ABA Standards Relating to Speedy Trial:

"Speedy trial may be of concern to the defendant, as he may want to preserve the means of proving his defense, to avoid a long period of pre-trial imprisonment or conditional release, and to avoid a long period of anxiety and public suspicion arising out of the accusation. From the point of view of the public, a speedy trial is necessary to preserve the means of proving the charge, to maximize the deterrent effect of prosecution and conviction, and to avoid, in some cases, an extended period of pretrial freedom by the defendant during which time he may flee, commit other crimes, or intimidate witnesses."

ABA Project on Minimum Standards for Criminal Justice, Standards Relating to Speedy Trial § 1.1 Commentary (Approved Draft, 1968). See *Strunk v. United States*, 412 U.S. 434, 93 S.Ct. 2260, 37 L.Ed.2d 56 (1973); *Barker v. Wingo*, 407 U.S. 514, 92 S.Ct. 2182, 33 L.Ed.2d 101 (1972).

■ Accordingly, we have held that Rule 1100(a)(2) "contemplates the commencement of the running of the mandatory period at the point criminal proceedings are initiated." *Commonwealth v. Mitchell*, 472 Pa. 553, 559, 372 A.2d 826, 829 (1977). Moreover, our Rules provide that all charges arising out of a criminal transaction shall be treated as a single case:

"When more than one offense is alleged to have been committed by one person arising out of the same incident, the issuing authority shall accept only one complaint, and shall docket the matter as a single case."

Pa.R.Crim.P. 131(b). Thus, Rule 1100(a)(2) and Rule 131(b) make clear that the 180 day speedy trial period set forth by Rule 1100 begins to run on all charges arising out of a criminal transaction upon the initiation of criminal proceedings charging the defendant with any offense arising out of that transaction.[4]

Rule 1100 recognizes exceptions to the requirement that trial be commenced within 180 days of the start of criminal proceedings. The Commonwealth is excused from the 180 day speedy trial rule if the length of time by which the Commonwealth exceeds the speedy trial period is attributable to delay caused by the unavailability of the defendant or defendant's counsel, Pa.R.Crim.P. 1100(d)(1); *Commonwealth v. Vaughn*, 475 Pa. 227, 380 A.2d 326 (1977); *Commonwealth v. Millhouse*, 470 Pa. 512, 368 A.2d 1273 (1977), or defense continuances longer than thirty days, Pa.R.Crim.P. 1100(d)(2); *Commonwealth v. Wade*, 475 Pa. 399, 380 A.2d 782 (1977). The Rule allows for extension of the 180 day time period upon the application of the Commonwealth wherever trial cannot be timely commenced despite the due diligence of the Commonwealth, Pa.R.Crim.P. 1100(c); compare *Commonwealth v. Shelton*, 469 Pa. 8, 364 A.2d 694 (1976), with *Commonwealth v. Mayfield*, 469 Pa. 214, 364 A.2d 1345 (1976). These exceptions recognize that in some circumstances absolute insistence upon a 180 day limit would not promote the purposes of our Rule.

The Commonwealth does not argue that delay in the commencement of these proceedings was caused by unavailability of the defendant or counsel or by continuances granted the defense in excess of thirty days. Nor does the Commonwealth assert that it sought and was improperly denied a request for an extension. Instead, the Commonwealth contends that trial commenced within 180 days of criminal proceedings. The Commonwealth reasons that the relevant starting time for measuring the Commonwealth's

4. We need not decide the effect of a complete dismissal on all charges arising out of a criminal transaction upon the speedy trial rule.

compliance with the Rule is February, 1975, when appellant while incarcerated was arrested again for the murder and conspiracy charges, and not July 28, 1974, when appellant was first charged with the offenses arising out of the shooting death of Robert Davis. We do not agree.

On July 28, 1974, appellant was charged with murder, criminal conspiracy, and several lesser offenses. These charges arose out of the same criminal transaction, the shooting death of Robert Davis. By charging appellant with these offenses, the Commonwealth initiated criminal proceedings against appellant, *Commonwealth v. Mitchell*, supra, and thus was obligated to bring these proceedings against appellant to trial within 180 days. Pa.R.Crim.P. 1100(a)(2); Pa.R.Crim.P. 131(b). Though charges of murder and conspiracy were dismissed at the preliminary hearing held September 4, 1974, other charges were still pending against appellant. Indeed, appellant remained in continuous custody on these charges. Though some of the criminal proceedings against appellant—the murder and conspiracy charges—were dismissed, appellant remained charged with possession of instruments of crime, possession of offensive weapons, aggravated assault, simple assault, and recklessly endangering another person. So long as a portion of the proceedings arising out of the shooting of Robert Davis remained pending, the Commonwealth's obligation to bring these proceedings against appellant to trial within 180 days remained unaltered. Not having fulfilled this obligation, the Commonwealth has failed to comply with the requirements of Rule 1100.

The Commonwealth's argument, if adopted, would allow the Commonwealth to grant itself in cases such as this an extension of the time for trial, without in any way reducing the burdens of the accused or the public. The accused, as here, remains incarcerated for long periods, subject to pretrial suspicion and uncertainty. Society must also wait for extended periods of time, postponing the orderly enforcement of the law, and jeopardizing the continued availability of valuable evidence. To allow such an extension without

any justification by the Commonwealth would be inconsistent with our speedy trial rule. See *Commonwealth v. Shelton,* supra.

The result we reach is supported by the relevant provisions of the ABA Project on Minimum Standards for Criminal Justice, Standards Relating to Speedy Trial (Approved Draft, 1968). Section 2.2(a) of the Standards provides:

"*When time commences to run.*

The time for trial should commence running, without demand from the defendant, as follows:

(a) from the date the charge is filed, except that if the defendant has been continuously held in custody or on bail or on recognizance until that date to answer for the same crime or a crime based on the same conduct or arising from the same criminal episode, then the time for trial should commence running from the date he was held to answer."

See *Dodge v. People,* 178 Colo. 71, 495 P.2d 213 (1972) (quoting standard with approval). As the Commentary to this section explains, this section recommends an important qualification:

"The one important qualification in the standard is that the time is to be counted from the date the defendant was held to answer only if the offense later charged is 'the same crime or a crime based on the same conduct or arising from the same criminal episode.'

.    .    .    .    .

"This qualification, which it is believed puts neither the defendant nor the prosecutor to an unfair advantage, is intended to clarify the significance of the fact that the offense charged may differ from the offense for which the defendant was held to answer. .    .    . The thrust of the qualification is that: (a) the prosecutor should not be responsible for the time which elapses before the charge was filed simply because the defendant was being held to answer on an unrelated offense; and (b) the defendant should not lose credit for the time which passes between the date he was held to answer and the date of the charge

simply because the offense charged, arising out of the same conduct or episode, differs somewhat from the offense for which the defendant was held to answer."

ABA Project on Minimum Standards for Criminal Justice, Standards Relating to Speedy Trial § 2.2(a) Commentary (Approved Draft, 1968).

Appellant was held in continuous custody on the other offenses for the entire period in which he could have been brought to trial. The dismissal of the murder and conspiracy charges did not relieve the Commonwealth of its obligation to bring the proceedings against appellant to trial, for charges arising out of the criminal transaction were still pending against appellant. The Commonwealth failed to bring appellant to trial within 180 days of July 28, 1974, has not justified the delay pursuant to Pa.R.Crim.P. 1100(d), and did not seek an extension of the time for trial pursuant to Pa.R.Crim.P. 1100(c). Appellant must therefore be discharged.

Judgment of sentence reversed and appellant ordered discharged.

EAGEN, C. J., concurs in the result.

POMEROY, J., filed a dissenting opinion in which O'BRIEN and LARSEN, JJ., join.

LARSEN, J., filed a dissenting opinion.

POMEROY, Justice, dissenting.

I dissent. The majority ignores the application of the Juvenile Act of December 6, 1972, P.L. 1464, No. 333, 11 P.S. § 50–101 *et seq.* (Supp.1977–78) to this case, and improperly concludes that the charges of murder and conspiracy to commit murder stand or fall, for purposes of Pa.R.Crim.P. 1100, with the lesser charges arising out of the same criminal transaction.

I.

On July 28, 1974, appellant, aged 16, was arrested and charged with murder, conspiracy, and several lesser of-

fenses[1] in connection with the shooting death of Robert Henry Davis. On August 22, 1974, a certification hearing was held in juvenile court on the lesser charges, and appellant was certified to be tried as an adult on these charges and held for action by the grand jury. Under Section 28(a)(4) of the Juvenile Act, 11 P.S. § 50–325(a)(4), the juvenile court was required before making such a certification to find, *inter alia,* that there was a prima facie case established against appellant.

The judge at the certification hearing did not, however, consider the murder charge against Earp, for the Juvenile Act "makes a clear distinction between juveniles charged with murder and those charged of delinquencies of a lesser nature." *Commonwealth v. Keefer,* 470 Pa. 142, 147, 367 A.2d 1082, 1084 (1976) (footnote omitted). Thus Section 2(2) of the Act, 11 P.S. § 50–102(2), provides that a " 'delinquent act' shall not include the crime of murder," and Section 28(e), 11 P.S. § 50–325(e), provides, with an exception not here relevant, that when a delinquency petition "alleges conduct which if proven would constitute murder, the court shall require the offense to be prosecuted under the criminal law and procedures."

Given these provisions of the Juvenile Act, it follows that the preliminary hearing held on September 4, 1974, which dealt with the charges of murder and conspiracy to commit murder, was not, as the majority implies, conducted in disregard of Pa.R.Crim.P. 131(b),[2] under which all charges arising out of a single criminal transaction are to be treated as a single case. Rather, the separate channels of the two preliminary proceedings in this case were occasioned by the requirements of the Juvenile Act. Moreover, these require-

---

1. The other offenses were possession of instruments of crime, possession of offensive weapons, aggravated assault, simple assault, and recklessly endangering another person.

2. Pa.R.Crim.P. 131(b) provides:

   "When more than one offense is alleged to have been committed by one person arising out of the same incident, the issuing authority shall accept only one complaint, and shall docket the matter as a single case."

ments are not affected by either Rule 131(b), which does not suspend the operation of the procedures contemplated by the Juvenile Act,[3] or the decision on which that rule is based, *Commonwealth v. Campana,* 452 Pa. 233, 304 A.2d 432, *vacated,* 414 U.S. 808, 94 S.Ct. 73, 38 L.Ed.2d 44 (1973), *on remand,* 455 Pa. 622, 314 A.2d 854, *cert. denied,* 417 U.S. 969, 94 S.Ct. 3172, 41 L.Ed.2d 1139 (1974), which was decided under this Court's supervisory powers. See *In re Juvenile "A",* 70 D. & C.2d 160, 27 Bucks Co.L.Rep. 50 (C.P.1975). The conclusion in *Campana* that all charges involved in one criminal episode are to be tried together does not dictate that they likewise must necessarily be dismissed together. Indeed, appellant has not at any time contended that the dismissal of the murder and conspiracy charges on September 4 should have operated as a dismissal of the lesser charges.

## II.

According to the majority, "[s]o long as a portion of the proceedings arising out of the shooting of Robert Davis remained pending, the Commonwealth's obligation to bring these proceedings against appellant to trial within 180 days [from the initiation of the original proceedings] remained unaltered." Opinion of the Court, *ante* at 375. This is so, the Court says, because the charges of murder and conspiracy, for purposes of Rule 1100, relate back to the date of the original arrest in July, 1974. This conclusion is erroneous.

Rule 1100, as we have said, "contemplates the commencement of the running of the mandatory period at the point criminal proceedings are initiated." *Commonwealth v. Mitchell,* 472 Pa. 553, 559, 372 A.2d 826, 829 (1977). When the murder and conspiracy charges against Earp were dismissed on September 4 because of the Commonwealth's failure to establish a prima facie case, the proceedings on those charges were not, as the majority implies, suspended, they were terminated. So far as those two charges were concerned, appellant was completely at liberty from Septem-

**3.** See Pa.R.Crim.P. 159.

ber, 1974 until February, 1975. To conclude, as the majority does, that the new proceedings for murder and conspiracy subsequently commenced against appellant must relate back to the date of the original arrest ignores the effect of the dismissal of the original charges. The Commonwealth was required to bring a wholly new prosecution against appellant on those charges if it chose to proceed further on them at all,[4] and nothing in Rule 1100 dictates that this new proceeding be treated, for purposes of the rule, as something different from what it actually was. Accordingly, the 180-day period of Rule 1100(a)(2), as applied to the murder and conspiracy charges, should be held to have begun anew at the time when appellant was again prosecuted for these charges in February, 1975. See *Commonwealth v. Mumich,* 239 Pa.Super. 209, 361 A.2d 359 (1976), *allocatur denied,* 239 Pa.Super. xxviii. This is especially so since the lesser charges which the majority uses to require, for speedy trial purposes, a relation back of the major charges to the date of the July arrest, remained outstanding as a result of a separate hearing mandated by the Juvenile Act.[5]

**4.** The dismissal of these charges in September, 1974, was plainly not a final determination under Pennsylvania law; the appellant remained subject to rearrest and a new prosecution. *Commonwealth v. Hetherington,* 460 Pa. 17, 22, 331 A.2d 205, 208 (1978); *Riggins Case,* 435 Pa. 321, 254 A.2d 616 (1969); *McNair's Petition,* 324 Pa. 48, 187 A. 498 (1936).

**5.** The majority argues that its disposition is in accordance with the relevant provisions of the ABA Project on Standards for Criminal Justice, Standards Relating to Speedy Trial § 2.2(a) (Approved Draft, 1968). Section 2.2(a) provides:

"The time for trial should commence running, without demand by the defendant, as follows:

"(a) From the date the charge is filed, except that if the defendant has been continuously held in custody or on bail or recognizance until that date to answer for the same crime or a crime based on the same conduct or arising from the same criminal episode, then the time for trial should commence running from the date he was held to answer;"

In my view, this reliance is misplaced, for nothing in the Standards or the commentary thereto indicates that the drafters contemplated the kind of bifurcated pre-trial procedure envisioned by the Juvenile Act. Indeed, the drafters indicate that Section 2.2(a) is primarily concerned with cases in which a defendant is held in custody before "a written statement [is] filed in a court which accuses a person of

The majority argues that the murder and conspiracy charges and the lesser charges could not be tried separately under the joinder rules of *Commonwealth v. Campana, supra;* that the lesser charges were dismissed with prejudice on Rule 1100 grounds; and that therefore the murder and conspiracy charges must also be dismissed, and cannot be tried by themselves. This to me is a non sequitur that loses sight of the salutary purposes which both rules seek to serve. As noted above, the rule announced in *Campana* that all related charges must be joined for trial did not dictate that because one charge is dismissed at the preliminary hearing stage, all charges must be so dismissed. Similarly, the *Campana* rule of joinder does not mandate that all such charges must be considered to have been brought on the same date for purposes of Rule 1100, with the consequence that if one charge is to be dismissed with prejudice under that rule, all must be dismissed. Appellant was tried but

an offense and which is sufficient to support a prosecution   .   .   ." *id.* § 2.3(f), Commentary, at 30.

It seems more useful to examine the Standards' treatment of the effect which dismissal of charges at a preliminary stage of a case has on the computation of time allowed for compliance with the speedy trial requirement. Section 2.2(b) of the Standards provides that if a charge has been dismissed on defendant's motion and a new charge is thereafter brought, the time for trial should begin to run anew from the date of the new charge. The Standards further provide that "[i]f the [original] charge was dismissed upon motion of the prosecuting attorney and thereafter a charge is filed against the defendant for the same offense or an offense required to be joined with that offense, the period of delay from the date the charge was dismissed to the date the time limitations would commence running as to the subsequent charge had there been no previous charge," *id.* § 2.3(f), is to be *excluded* from computing the time for trial; that is, the speedy trial period would be tolled until the new charge is brought. See *id.* § 2.3(f), Commentary, at 30–31.

The Standards, under which "[t]he critical distinction   .   .   .   is whether dismissal was at the instance of the prosecutor or the defendant," *id.,* Commentary to § 2.2(b), at 24, do not directly address the situation presented by the instant case, since the record indicates that the murder and conspiracy charges were dismissed without a motion from either side. N.T.Prel.Hng. (9/4/74), at 15–16. But I cannot see why the clock must continue to run under Rule 1100 when there is a *sua sponte* dismissal by the court, whereas under the Standards the clock does not keep running when dismissal is at the behest of either the prosecution or the defense.

once on the charges arising out of the shooting of Robert Davis that were then outstanding against him, and hence no violation of the principles of *Campana* occurred. The trial of these charges, which were brought in February, 1975, was begun in August of that year, as contemplated by Rule 1100.

That appellant remained incarcerated on the lesser charges [6] until after his rearrest on February 10, 1975 is, for purposes of speedy trial on the previously dismissed major charges, irrelevant. Whatever "pre-trial suspicion and uncertainty" may have existed for Earp during the interim period, Opinion of the Court, *ante* at 375, could not have existed with respect to the murder and conspiracy charges, which a judicial officer had dismissed as unfounded. Such burdens were present only as to the lesser charges for which appellant was held and as to which, as the Court notes, he later secured a complete discharge because he was not brought to trial thereon within 180 days.

## III.

The majority declares that to treat this murder and conspiracy prosecution as a new proceeding with a new 180-day period for trial under Rule 1100 "would allow the Commonwealth to grant itself in cases such as this an extension of time for trial, without in any way reducing the burdens of the accused or the public." Opinion of the Court, *ante* at 375. This statement is insupportable. The Commonwealth does not contend that the time for trial on the lesser charges should have been extended by the new prosecution for murder and conspiracy; it argues only that the trial for murder and conspiracy could properly be started at any time within 180 days following the commencement of the new criminal proceeding on those charges. This is plainly not a case in which the Commonwealth has acted in bad faith or intentionally sought to evade the mandate of

6. The record indicates that appellant was unable to make bail.

Rule 1100.[7]  It is clear from the record that Earp was discharged at the preliminary hearing on September 4 only because the Commonwealth did not succeed in persuading the hearing judge that there was a prima facie case of murder against appellant.[8]  As the trial judge noted in denying appellant's motion to dismiss the murder and conspiracy charges for non-compliance with Rule 1100, "there was no evidence in this case of purposeful delay . . ." N.T. (5/19/75) at 45.  Thus there is simply no basis for a conclusion that the Commonwealth somehow sought to extend the time for trial on any charge when it lost its case at the September preliminary hearing.

The majority's discussion of "burdens" reflects similar confusion.  As above noted, the burdens on appellant as an accused person during the period from September 4, 1974 to February 10, 1975 stemmed only from the pendency of the *lesser* charges that were ultimately, in April, dismissed with prejudice because of violation of the speedy trial rule, a result not contested here by the Commonwealth.  There were no other charges outstanding against appellant during this period, and any burdens suffered by him as a result related to a period of pre-arrest delay, not pre-trial delay.  This is because appellant was not held for trial on the murder and conspiracy offenses until after his second arrest, and because the provisions of Rule 1100 are not concerned with the prejudice to one's defense that may be caused by delay in the bringing of criminal proceedings.  Whatever

7.  Compare *Commonwealth v. Whitaker,* 467 Pa. 436, 359 A.2d 174 (1976), in which the Commonwealth moved for a *nolle prosequi* two days before the expiration of the mandatory time period.

8.  Appellant contends that there were eight witnesses available and known to the Commonwealth at the time of the first preliminary hearing.  Although it is true that the Commonwealth presented one of these witnesses at the first hearing, this, without more, proves nothing.  The record does not indicate that these witnesses would have testified at the first hearing, or that their possible testimony would have established a prima facie case against appellant.  The Commonwealth's decision to present only one witness could have been motivated by any number of reasonable considerations, and it is not for an appellate court to second-guess the manner in which the Commonwealth presented its case.

prejudice to appellant's defense may have resulted from the lapse of time between the shooting of Robert Davis on July 28, 1974, and Earp's second arrest for murder on February 10, 1975—and I emphasize that no prejudice has been shown—is a matter which affects the accused's right to due process of law, not his right to a speedy trial under Rule 1100. See *United States v. Lovasco,* 431 U.S. 783, 97 S.Ct. 2044, 53 L.Ed.2d 752 (1977); *United States v. Marion,* 404 U.S. 307, 92 S.Ct. 455, 30 L.Ed.2d 468 (1971); *Commonwealth v. Crawford,* 468 Pa. 565, 364 A.2d 660 (1976); *Commonwealth v. De Rose,* 225 Pa.Super. 8, 307 A.2d 425 (1973).

The burdens on society identified by the Court (e. g., delay in law enforcement, loss of valuable evidence) would also, so far as the murder and conspiracy charges in this case are considered, be caused by a delay in arrest. And society's interest in law enforcement, I suggest, is ill-served by the discharge of this appellant on a tenuous and novel application of Rule 1100 to a situation with which it was not designed to deal, and which was caused by a false start that was made in good faith. I dissent.

O'BRIEN and LARSEN, JJ., join in this opinion.

LARSEN, Justice, dissenting.

I wholeheartedly join Justice Pomeroy in his dissenting opinion.

I would also like to emphasize that the majority now wants Pa.R.Crim.P. 131(b) to serve the new and novel purpose of causing the arrest which was made on February 10, 1975, to be "construed" as if it were made on July 28, 1974, so that the defendant, who was convicted of murder of the first degree and conspiracy, will be discharged because he was not tried within one hundred eighty days (Pa.R.Crim.P. 1100) of the "construed" arrest date. The defendant was in fact tried within one hundred eighty days of his actual arrest.

The majority has misconstrued the purpose and effect of Rule 131(b). Rule 131(b) provides that all alleged offenses

". . . arising from the same incident, the issuing authority shall accept only one complaint and shall docket the matter as a single case." Rule 131(c) provides that when 131(b) is not adhered to, ". . . a judge of the court may order the forfeiture of all additional costs of the issuing authority accrued by reason of such violation . . .." Thus, Rule 131(b), which was adopted three years [*] before Rule 1100 came into existence was adopted for the sole purpose that a defendant would not be wrongfully subjected to multiple arrests and hearings and additional costs for alleged multiple crimes arising out of one incident. It was not adopted for the purpose of somehow being wed to Rule 1100 to reach the result which the majority reached.

The effect of the majority's opinion is to have created a one hundred eighty day Statute of Limitations for the crime of murder for this defendant and other defendants similarly situated. For the other citizens of the Commonwealth there is not, nor should there be, a Statute of Limitations for the crime of murder.

The majority is piling technicalities upon technicalities with the result that *form* is taking precedence over *substance;* this is wrong—all form must emanate out of substance. I dissent.

---

[*] Rule 131 replaced former Rule 103 which contained identical language.