[J-49-2023] [MO: Mundy, J.]

# IN THE SUPREME COURT OF PENNSYLVANIA
## MIDDLE DISTRICT

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA, | : | No. 110 MAP 2022 |
| | : | |
| Appellee | : | Appeal from the Order of the |
| | : | Superior Court at No. 445 MDA |
| | : | 2021 dated April 29, 2022 Affirming |
| v. | : | the Judgment of Sentence of the |
| | : | Huntingdon County Court of |
| | : | Common Pleas, Criminal Division, |
| MARCUS WOMACK, | : | at No. CP-31-CR-0000851-2018 |
| | : | entered November 12, 2020. |
| Appellant | : | |
| | : | ARGUED:  September 14, 2023 |

## CONCURRING OPINION

**JUSTICE WECHT**                                          **DECIDED:  May 31, 2024**

In 2016, the Pennsylvania State Police ("PSP") commenced an investigation into a statewide trafficking operation that was funneling drugs into Huntingdon County.  On October 6, 2017, following extensive surveillance, the use of confidential informants, and a number of controlled purchases, the PSP charged Marcus Womack with a litany of drug and firearm offenses arising from his participation in the drug operation.  The Huntingdon County District Attorney ("the DA") commenced prosecution on the first set of charges.  Meanwhile, the PSP continued to investigate, and soon discovered that the operation was much larger than the PSP originally had believed.

After the PSP amassed more evidence against Womack (and others), the Office of the Attorney General ("the OAG") took over the case and presented the new evidence to an investigating grand jury.  On October 23, 2018, the grand jury returned a presentment detailing Womack's participation in drug trafficking.  Following the presentment, the PSP filed a second criminal complaint against Womack.  After a

preliminary hearing on the second complaint, the OAG charged Womack by criminal information with twenty-eight offenses, some of which overlapped in both date and substance with some of the charges filed in the first case.

Meanwhile, in view of the OAG's developing work on the second case, the DA repeatedly delayed Womack's first proceeding. As a result, Womack filed a Pa.R.Crim.P. 600 speedy trial motion. Finding that the DA failed to act with due diligence, the trial court granted the motion, and dismissed the first case in its entirety. Womack also filed a Rule 600 motion in the second case. He argued that, due to the similarities in dates and substance, the second case was no more than an extension of the first case, and should be evaluated using the same initial filing date—October 6, 2017—for Rule 600 purposes. Following a hearing, the trial court denied the motion. In the meantime, the OAG amended the information in the second case, adjusting the dates and reducing the number of charges from twenty-eight to thirteen.

After a number of other procedural events, and some further delay related to the 2020 pandemic, Womack renewed his Rule 600 motion, arguing once again that the two cases should be treated as one for Rule 600 purposes. The trial court denied the motion. Following a non-jury trial, Womack was convicted of nine of the charges and sentenced to a lengthy term of incarceration.

We granted allowance of appeal in order to determine how and when Rule 600's time provisions begin to tally against the Commonwealth in this dual-complaint case. We first confronted the interplay between our speedy trial rule and multiple criminal complaints in *Commonwealth v. Earp*.[1] In that case, the appellant was arrested and charged with murder, conspiracy, and a litany of other crimes. At the appellant's preliminary hearing, the Commonwealth failed to establish a *prima facie* case on the

---

[1]     382 A.2d 1215 (Pa. 1978) (plurality).

murder and conspiracy charges, and those counts were dismissed.  However, the other charges were held for trial.  While Earp was still incarcerated on that first set of charges, the police re-arrested him and re-charged him with the murder and conspiracy charges.[2]

The appellant filed a Rule 600 (then designated as Rule 1100) motion.  The trial court granted the motion as to the charges that remained from the initial complaint, but not as to the murder and conspiracy charges.  The court explained that the murder and conspiracy charges were measured for speedy trial purposes from the date that those charges were re-filed, not from the date when they initially were filed (and then dismissed).  The appellant proceeded to trial, was convicted of both charges, and was sentenced to life in prison.[3]

On allowance of appeal, a plurality of this Court vacated the appellant's judgment of sentence.  The plurality noted that speedy trial calculations begin when criminal proceedings are initiated,[4] and, just as importantly, that the compulsory joinder rule in place at the time[5] required that all offenses arising from the same incident be filed in the same complaint.  Thus, taken together, the two rules required a speedy trial time calculation to begin "to run on all charges arising out of a criminal transaction upon the

---

[2]     *Id.* at 1216-17.

[3]     *Id.* at 1217.

[4]     *Id.* (quoting *Commonwealth v. Mitchell*, 372 A.2d 826, 829 (Pa. 1977) (deeming it "clear" that our speedy trial rule "contemplates the commencement of the running of the mandatory period at the point criminal proceedings are initiated")).

[5]     In 1978, Pa.R.Crim.P. 131(b) stated that, "[w]hen more than one offense is alleged to have been committed by one person arising out of the same incident, the issuing authority shall accept only one complaint, and shall docket the matter as a single case." Presently, compulsory joinder is governed generally by 18 Pa.C.S. §§ 109-11.

initiation of criminal proceedings charging the defendant with any offense arising out of that transaction."[6]

The plurality recognized that there are some exceptions to this strict rule, such as delays that can be attributed to the defendant or delays that occur despite the Commonwealth's exercise of due diligence at all relevant times.[7] However, no exception exists for the circumstance in which some charges in a complaint are dismissed and are then re-filed in a separate, subsequent complaint. To afford the Commonwealth the benefit of the later date, the plurality held, "would allow the Commonwealth to grant itself in cases such as this an extension of the time for trial, without in any way reducing the burdens of the accused or the public."[8] "The accused . . . remains incarcerated for long periods, subject to pretrial suspicion and uncertainty. Society must also wait for extended periods of time, postponing the orderly enforcement of the law, and jeopardizing the continued availability of valuable evidence."[9] The plurality emphasized that these avoidable consequences would be inconsistent with the purposes underlying the speedy trial rule.

This Court returned to the dual-complaint scenario seven years later in *Commonwealth v. Simms*.[10] In *Simms*, the appellant was charged by criminal complaint with aggravated assault after he stabbed and then burned his live-in girlfriend.[11] The victim died approximately six weeks later, and, as a result, the appellant was charged in

---

[6]     *Earp*, 382 A.2d at 1217.

[7]     *Id.* at 1217-18.

[8]     *Id.* at 1218.

[9]     *Id.*

[10]    500 A.2d 801 (Pa. 1985).

[11]    *Id.* at 802.

a second complaint with first-degree murder. The question in the case was whether the first or second complaint served as the starting point for a Rule 600 calculation. If the clock began to run with the filing of the first complaint, then too much time had elapsed and the murder case had to be dismissed. If it began with the latter complaint, then the prosecution was timely. This Court held that the second of these two outcomes was the correct one.

We cautioned against the abuses of Rule 600 that might occur if the Commonwealth is unrestrained in its ability to file multiple, or successive criminal complaints. "The keystone of judicial decisions applying [the rule] has been a recognition that an abuse of the spirit of that Rule would occur if the Commonwealth were permitted to delay trials by simply, at will, withdrawing or dismissing complaints and filing new ones, thereby beginning anew the [time] period for commencement of trial."[12] In light of this concern, the *Simms* Court noted, our precedents had permitted a subsequent complaint to restart the Rule 600 clock only in limited circumstances,[13] such as when "(1) the earlier complaint was properly dismissed by a competent magisterial or judicial authority, and (2) [when] the record does not reveal evidence of a prosecution attempt to circumvent" the rule.[14]

The record in *Simms* did not indicate if, or how, the aggravated assault complaint was resolved. The Commonwealth asserted only that the complaint alleging that crime was moot. The appellant insisted that this meant that the first element of the test could not be met. We disagreed, emphasizing that the circumstances of the case deviated from

---

[12]   *Id.* at 803.

[13]   *Id.* (citing *Commonwealth v. Horner*, 442 A.2d 682 (Pa. 1982); *Commonwealth v. Genovese*, 425 A.2d 367 (Pa. 1981)).

[14]   *Id.* (citing *Commonwealth v. Ardolino*, 450 A.2d 674, 677-79 (Pa. Super. 1982)).

cases in which the same charges were re-filed after some error or lack of diligence by the Commonwealth. In those latter scenarios, this Court acknowledged the potential that the second complaint was filed as an attempt to evade Rule 600's time constraints. In *Simms*, however, such evasion was not possible, because the murder charge was an entirely different count that could not have been filed at the time of the initial complaint. Thus, we held, the first element of the test was immaterial because the appellant could not establish the second one.[15]

We distinguished the case from our earlier decision in *Earp*, which, we remarked, had by that time been limited to its facts.[16] Unlike *Earp*, *Simms* was not a case in which a charge that could have been filed earlier was withheld from the initial complaint. Unlike in *Earp,* where the murder and conspiracy charges were available from the outset, in *Simms*, there were no compulsory joinder problems because the victim had not yet died at the time of the first filing. The murder charge could not have been filed at the time that the initial complaint was filed.[17]

Rule 600, we stressed, was not designed to insulate defendants from good faith prosecutions that are delayed due to circumstances beyond the control of the Commonwealth. Thus, when a person is charged with aggravated assault and the victim later dies, that defendant is not entitled to escape prosecution on the murder charge, absent some bad faith or lack of diligence on the part of the Commonwealth. We held that "common sense dictates" that the subsequent filing of murder charges that arose since the initial filing cannot be considered an attempt to evade the rule.[18] To decide

---

[15] *Id.*

[16] *Id.* at 804 (citing *Horner*, 442 A.2d at 685 n.9; *Genovese*, 425 A.2d at 370 n.11; *Commonwealth v. Johnson*, 409 A.2d 308, 311 n.3 (Pa. 1979)).

[17] *Id.*

[18] *Id.*

otherwise would require the Commonwealth to adhere to one initial filing date, even as to crimes that have not yet been committed or completed.

We acknowledged that allowing multiple complaints might result in a defendant spending a significant period of time in jail before trial, perhaps even exceeding the time allowed by the rule. However, Rule 600 requires "a balancing of certain interests, such interests being the protection of the accused's speedy trial rights and the protection of society."[19] That balance tips in the Commonwealth's favor when a second or subsequent complaint is based upon a crime that was not completed or committed at the time that the initial complaint was filed.

Prior to today's case, our most recent decision involving a dual-complaint scenario was *Commonwealth v. Meadius*.[20] In that case, the appellant's preliminary hearing was scheduled three times. On the first listed hearing date, the prosecuting attorney was unavailable. At the second listing, an essential Commonwealth witness was absent, and the case was again postponed. At the third, and final, listing, the Commonwealth again could not proceed because critical witnesses had failed to appear.[21] The magisterial district judge denied the Commonwealth's request for another postponement and threatened to dismiss the complaint. The Commonwealth elected instead to withdraw the charges.[22]

The prosecutor dispatched the lead detective to locate the absent witnesses and determine their availability at future hearings. Those witnesses indicated to the detective that they would appear for all such hearings. Upon such assurances, the Commonwealth

---

[19] *Id.*

[20] 870 A.2d 802 (Pa. 2005).

[21] *Id.* at 803.

[22] *Id.*

re-filed the charges, and all of the necessary witnesses appeared at the subsequent preliminary hearing. The appellant waived that hearing, and the charges were held for trial.[23]

The appellant then filed a Rule 600 motion, which the trial court granted, finding that the filing of the first complaint triggered the commencement of Rule 600's time period, and concluding that the Commonwealth had failed to act with due diligence. On appeal, the Superior Court reversed. Upon further review, this Court agreed with the trial court.

We explained that, while Rule 600 "embrace[s] a fairly straightforward standard" for adjudicating single-complaint speedy trial claims, the rule says nothing about how to assess cases "where identical charges have been filed on two occasions."[24] The determination of the time at which the Rule 600 clock starts in dual-complaint scenarios has proved vexing for courts. This is so particularly because courts must be mindful of the Rule's purpose, the Commonwealth's duty of due diligence, and the risk that successive complaints could be used as a means to evade the consequences of violating the Rule's time limit. We noted that, in *Simms*, this Court advanced a two-part test with these considerations in mind.[25] This test, along with the text of the Rule itself, bifurcated dual-complaint scenarios into two categories. The first arises when the circumstances necessitating the second filing are beyond the control of the Commonwealth.[26] In such circumstances, the Commonwealth is entitled to the benefit of the later filing date. The second arises when the Commonwealth acts with the intent to evade Rule 600. When

---

[23]    *Id.*

[24]    *Id.* at 805.

[25]    *Id.* at 806.

[26]    *Id.* at 807-08 (citations omitted).

that occurs, the clock starts to tick on the initial filing date.[27]  Thus, the question for the *Medius* Court turned on the question of whether the lack of due diligence fell into the former or the latter category.  We held that the failure to act with due diligence should be treated no differently than acting with an evasive intent.[28]  "Indeed, a contrary result would undermine the rule's own facial requirements directed to prosecutorial diligence, as well its objectives, which include advancing society's interests in seeing those accused of crime prosecuted in a timely manner, as well as ensuring the efficient management of criminal cases as a means of avoiding substantial backlogs."[29]  Because the Commonwealth failed to act with due diligence, we concluded that the trial court had not abused its discretion in using the date of the filing of the first complaint for Rule 600 purposes.

While the text of Rule 600 does not speak to the dual-complaint scenario, the comment to the Rule offers the following:

> In cases in which the Commonwealth files a criminal complaint, withdraws that complaint, and files a second complaint, the Commonwealth will be afforded the benefit of the date of the filing of the second complaint for purposes of calculating the time for trial when the withdrawal and re-filing of charges are necessitated by factors beyond its control, the Commonwealth has exercised due diligence, and the refiling is not an attempt to circumvent the time limitation of Rule 600.[30]

In this case, the Commonwealth did not formally withdraw its initial complaint against Womack.  The Majority nonetheless correctly extends the applicability of the

---

[27]  *Id.* at 808.

[28]  *Id.*

[29]  *Id.* (citations omitted).

[30]  Pa.R.Crim.P. 600, cmt.

Rule's comment to the circumstances of the case at bar.[31]  It does not matter if the initial complaint was withdrawn or dismissed for lack of diligence or of evidence.  The resulting analysis is the same.  Thus, I agree with the Majority that, although the Commonwealth's prosecution of the first complaint lacked any semblance of diligence, there is no reason to believe that the second complaint was "precipitated by its lack of diligence in prosecuting the first complaint."[32]  To the contrary, at least with regard to the second complaint, the Commonwealth appears to have acted with due diligence at all times.  The second complaint was the result of the PSP's discovery that the drug operation was much larger than originally believed, and that further investigation was necessary.  Much of the evidence underlying the charges in the second complaint was not even discovered until after the first complaint was filed.  There is no evidence here to suggest that the second complaint, as a whole, was an attempt by the Commonwealth to circumvent or manipulate Rule 600.[33]

The Majority concludes that the charges in the second complaint "were not, and could not have been, included in the Commonwealth's initial complaint."[34]  I read this statement as the Majority's (correct) acknowledgment that second or successive complaints subjected to review under the *Meadius* test should not be treated as either failing or succeeding on a blanket basis.  Even a complaint, such as the one under review here, that facially does not appear to be an attempt to evade Rule 600 still must be evaluated on a charge-by-charge basis.  That is because the Commonwealth is entitled

---

[31]    Maj. Op. at 15.

[32]    *Id.*

[33]    *See* Maj. Op. at 14-16.

[34]    *Id.* at 16 (citing Trial Ct. Op., 4/21/2021, at 32-35).

to the benefit of the second filing date only for charges that could not have been filed in the first complaint. I do not read the Majority's decision as contrary to this understanding.

The second complaint in this case presents a new twist on the traditional dual-complaint scenario. This complaint was neither an amendment to the initial complaint nor an attempt to re-file the same or similar complaint after the first had been dismissed for a lack of evidence, witnesses, or prosecutorial diligence. It was instead a successive complaint born in good faith out of an ongoing investigation.

This type of complaint is in no way immune from our deep-seated concern that successive complaints might be used to evade the strictures of Rule 600. The potential for abuse is the same—if not even higher—in this context. A prosecutor can use a second complaint to revive individual charges just as easily as that prosecutor can do so to revive an entire complaint. Ongoing investigations naturally will have some overlap in facts and evidence. Those investigations often lead to new charges disconnected entirely from those investigated initially. At times, new or additional evidence concerning a crime that the police knew about, but could not prove, does not arise until later in the investigation. Courts must be vigilant in ensuring that the charges in a later complaint are predicated upon the new and previously unavailable evidence. A second complaint cannot include charges predicated upon previously known or available evidence that could have been brought in the earlier, dismissed complaint. To allow such charges would engender the very abuse against which our precedents have steadfastly guarded.

Nothing in our precedents requires a complaint to be treated as a whole. Rule 600 does not require consideration of complaints on an all or nothing basis. With regard to dismissal, the Rule does not use the word "complaint" or "case" or "information" or "indictment," as one would expect if the Rule intended the charging document to be treated as a whole. Instead, in its remedy section, the Rule provides that a defendant

can ask to have "the charges" dismissed with prejudice.[35]  This necessarily means that, in a dual-complaint case, a court can dismiss all of the charges, or it can dismiss some of the charges —those that could have been brought in the earlier complaint—but not others—those that were entirely independent from the first complaint.

The Majority does not engage independently in the close, record-based inspection of the charges that is required in a case like this.  The Majority instead appears to rely entirely upon the trial court's own comparative analysis.  Initially, this gave me pause, because adopting a lower court's analysis is not a typical protocol for this Court.  However, in this case, such adoption is warranted.  In seventy paragraphs, and with two charts, the trial court painstakingly outlined the facts and procedural history of this case.[36]  The court then discussed each of the charges asserted in the second complaint.[37]  The court found that either the police did not know about the nature and extent of the crimes before filing the first complaint, or the evidence necessary to prove such crimes did not become available until after the first complaint was filed.

The trial court did not stop there.  The court also created "Exhibit A."  Attached to the end of the trial court's opinion, "Exhibit A" is a detailed chart in which that court listed each charge, provided the statutory citation for each charge, identified the count numbers for each of the charges, ascertained whether there was an independent basis for the charge, queried whether it "could have been brought based upon information available on 10/06/2017," asked whether the particular count presented a joinder issue and, if so,

---

[35]     *See* Pa.R.Crim.P. 600(D)(1).

[36]     *See* Trial Ct. Op., 4/21/2021, at 32-35.

[37]     *Id.* at 32-34.  Notably, the court found that the receiving stolen property count should not have been brought in the second complaint, as it was based upon evidence known to the PSP at the time the first complaint was filed.  However, Womack was acquitted of that count, so the court deemed any issues related to that count to be moot. *Id.* at 32.

stated the outcome of that joinder analysis.[38]  The court's conclusions are well-reasoned and supported by my review of the record.  Any independent analysis by this Court could, in my view, offer little more than a recreation of the trial court's fine work in this chart. Such a duplicative effort is not necessary here.  Accordingly, in this exceptional instance, I agree with the Majority's decision to rely so heavily upon the trial court's meticulous, exemplary efforts.

Subject to my understandings set forth above, I join the Majority Opinion.

---

[38]    *See* Trial Ct. Op., 4/21/2021, Exh. A.