425 A.2d 367

**COMMONWEALTH of Pennsylvania, Appellant,**

**v.**

**Anthony GENOVESE, Appellee.**

Supreme Court of Pennsylvania.

Argued April 14, 1980.

Decided Feb. 4, 1981.

66

Stephen  G.  Bresset,  Asst.  Dist.  Atty.,  for  appellant.

William R. Lee, Christopher T. Powell, Peter T. O'Malley, Scranton, for appellee.

Before EAGEN, C. J., and O'BRIEN, ROBERTS, NIX, LARSEN, FLAHERTY and KAUFFMAN, JJ.

## OPINION

KAUFFMAN, Justice.

The Commonwealth appeals from an order pursuant to Pa.R.Crim.P. 1100(f) dismissing murder and related charges against appellee, Anthony Genovese, arising out of the death of a 23 month old infant.[1] The sole issue presented is whether the 180 day period mandated by Rule 1100 commences on the date of filing the first or the second criminal complaint when all charges contained in the first complaint have been dismissed at a preliminary hearing for failure to state a *prima facie* case, when there has been no improper effort by the Commonwealth to circumvent Rule 1100, and when the accused has been rearrested on the same charges. Because the trial court erroneously calculated the Rule 1100 run date from the filing of the first complaint, we reverse and remand for trial.[2]

On Christmas morning, 1977, the Honesdale Ambulance Corps responded to an emergency call from the home of Larraine Forry and appellee, where they found Ms. Forry's 23 month old daughter, Christine, in an unconscious state. The child was taken immediately to the Community Medical Center in Scranton, where she died four days later as a result of a fractured skull. After a police investigation, appellee was arrested on March 24, 1978 and charged with murder, voluntary manslaughter, involuntary manslaughter, reckless endangerment, aggravated assault and endangering the welfare of a child.

1. Jurisdiction is vested in this Court pursuant to the Judicial Code, Act of July 9, 1976, P.L. 586, No. 142, § 2, 42 Pa.C.S.A. § 722(1).

2. This opinion was reassigned to this writer on September 26, 1980.

The preliminary hearing commenced on April 3, 1978 and, after various delays and motions not here relevant, was scheduled to recommence on May 10, 1978. On May 3, 1978, however, the defense filed a motion to secure the attendance of Dr. Dominic J. DiMaio, an out-of-state witness.[3] The motion was denied the following day, whereupon defense counsel immediately petitioned the court for and received permission to depose Dr. DiMaio.[4] The deposition originally was scheduled for May 19, 1978. However, on May 9, 1978, the Commonwealth filed with this Court a Petition for Review in the Nature of a Writ of Prohibition seeking to prevent the taking of Dr. DiMaio's deposition.[5] We denied the Commonwealth's petitions on May 23, 1978, and the deposition was rescheduled for July 7, 1978.

In the interim, the original district justice resigned and another was specially assigned to conduct the preliminary hearing. On August 22, 1978, after hearing testimony for three days and following appellee's challenge to the sufficiency of the Commonwealth's evidence, the new district justice dismissed all charges for lack of a *prima facie* case and released appellee from bail.[6] It is thus clear from the record that appellee was not discharged at the preliminary hearing at the request or instigation of the prosecutor, but only because the Commonwealth failed to persuade the district justice that it had presented a *prima facie* case. There is no evidence of any attempt by the Commonwealth to evade the mandate of Rule 1100.

■ On September 11, 1978, a second complaint, containing charges identical to those previously dismissed, was filed before a third district justice, and appellee was arrested the

3. Dr. DiMaio had performed the autopsy on the deceased child.

4. The proceedings were stayed for a period not to exceed 20 days to allow the defense to take the deposition.

5. The Commonwealth simultaneously filed a Petition for Stay of all Proceedings Pending Determination of Petition for Writ of Prohibition and a Petition for Hearing in this Court.

6. Appellee had been free on $20,000 bail since March 25, 1978.

next day.[7]  Following a preliminary hearing, the district justice concluded that the Commonwealth had established a *prima facie* case.[8]

■ On December 20, 1978, appellee filed a motion to dismiss all charges with prejudice pursuant to Pa.R.Cr.P. 1100(f), claiming that in excess of 180 days had passed since the filing of the original complaint.[9]  The motion was granted on January 18, 1979, and this appeal by the Commonwealth followed.[10]

■ Rule 1100 "serves two equally important functions: (1) the protection of the accused's speedy trial rights, and (2)

7.  An accused may be rearrested and prosecuted despite the dismissal of charges at the preliminary hearing. *Commonwealth v. Hetherington*, 460 Pa. 17, 331 A.2d 205 (1975); *Riggins Case*, 435 Pa. 321, 254 A.2d 616 (1969); *McNair's Petition*, 324 Pa. 48, 187 A. 498 (1936).
   A finding by a committing magistrate that the Commonwealth has failed to establish a prima facie case is not a final determination, such as an acquittal, and only entitles the accused to his liberty for the present, leaving him subject to rearrest.
   *Commonwealth v. Hetherington*, 460 Pa. at 22, 331 A.2d at 208.

8.  On January 2, 1979, the Grand Jury for Wayne County indicted appellee on charges of murder, voluntary manslaughter, reckless endangerment, aggravated assault, and endangering the welfare of a child.

9.  Pa.R.Cr.P. 1100(a)(2) provides:
   Trial in a court case in which a written complaint is filed against the defendant ... shall commence no later than one hundred eighty (180) days from the date on which the complaint is filed.

10.  On September 14, 1978, the Commonwealth had filed a petition for extension of time which was denied on October 6, 1978 on the ground that the Commonwealth had failed to establish "due diligence" as required by Rule 1100(c). Appellee here maintains that since the Commonwealth failed to appeal from the October 6 order, it waived all future opportunity to question the appropriate time period under Rule 1100. He argues that the petition for extension was actually a request for a determination that the 180 day period commenced from the filing of the second complaint rather than from the first complaint, and hence, that it was a final, appealable order. The opinion and order of October 6 reflect, however, that the court treated the Commonwealth's petition merely as a Rule 1100(c) petition for extension, the denial of which is not an appealable final order. Thus, the Commonwealth is not barred from here contending that the 180 day period commenced from the second, not the first, complaint.

the protection of society," *Commonwealth v. Brocklehurst*, 491 Pa. 151, 153–154, 420 A.2d 385, 387 (1980); *Commonwealth v. Hamilton*, 449 Pa. 297, 297 A.2d 127 (1972). In determining whether an accused's right to a speedy trial has been violated, consideration must be given to society's right to effective prosecution of criminal cases, both to restrain those guilty of crime and to deter those contemplating it. *Commonwealth v. Johnson*, 487 Pa. 197, n.4, 409 A.2d 308, n.4 (1980). The administrative mandate of Rule 1100 certainly was not designed to insulate the criminally accused from good faith prosecution delayed through no fault of the Commonwealth.

In *Commonwealth v. Cartagena*, 482 Pa. 6, 393 A.2d 350 (1978) (plurality), this Court was confronted with the very issue now before us, and we expressly held that the 180 day period commences from the filing of a second complaint. In *Cartagena*, as here, *all* charges against the defendant were dismissed at the preliminary hearing for lack of a *prima facie* case and the defendant was discharged. Three days later, another complaint based on the same episode was filed, the defendant was rearrested, and after a second preliminary hearing, he was held over for trial. On these facts, we held that the Rule 1100 period ran from the filing of the second complaint: "Even though based on the same episode, the second criminal complaint . . . was the one which commenced this prosecution. As such, appellant's trial was commenced within 180 days . . ." 482 Pa. at 19–20, 393 A.2d at 357.[11]

---

11. Justice (now Chief Justice O'Brien succinctly distinguished *Commonwealth v. Earp*, 476 Pa. 369, 382 A.2d 1215 (1978):

> There, the defendant was arrested and charged with murder, conspiracy and several lesser included offenses arising from the same criminal episode. At a preliminary hearing, the murder and conspiracy charges were discharged, but the defendant was continuously held on all other charges. This continuous confinement was the crucial factor in discharging the defendant, even though the murder and conspiracy charges were later refiled and the trial was commenced within 180 days of that date.

*Cartagena*, 482 Pa. at 19, 393 A.2d at 357. Moreover, in *Earp*, this Court expressly declined to reach the issue squarely presented here: "We need not decide the effect of a complete dismissal on all charges

Appropriate computation of the 180 day period was further refined in *Commonwealth v. Johnson*, 487 Pa. 197, 409 A.2d 308 (1979). Therein, a complaint was filed against the defendant, but the grand jury refused to indict. After obtaining additional evidence, the Commonwealth resubmitted the matter to a new grand jury and an indictment was returned. On these facts, this Court excluded from the Rule 1100 computation the time period between the refusal of the first grand jury to indict and indictment by the second grand jury.[12]

Unlike the case before us, *Johnson* involved *only one complaint*, and in fact proceeded to trial without a second complaint ever being issued.[13] Here, once the first complaint was dismissed, it became a nullity for *all* purposes, including Rule 1100. As in *Cartagena, supra*, "the second complaint . . . was the one which commenced this prosecution," 482 Pa. at 19, 343 A.2d at 357, and there is no evidence of a prosecutorial plan to avoid the mandate of the Rule. It follows, therefore, that the 180 day period must commence from the filing of the second complaint.[14]

arising out of a criminal transaction upon the speedy trial rule." 476 Pa. at 374, n.4, 382 A.2d at 1217, n.4. *See also Commonwealth v. Lowe*, 255 Pa.Super. 78, 386 A.2d 144 (1978).

12. This Court limited the rationale of *Commonwealth v. Whitaker*, 467 Pa. 436, 359 A.2d 174 (1976), to those cases "where there is an obvious attempt to evade the requirements of Rule 1100(c) through the use of the *nolle prosequi* procedure." *Johnson*, 487 Pa. at 204, 409 A.2d at 311.

13. This Court distinguished those cases which were prosecuted on the basis of a second complaint:
These cases only establish that Rule 1100 requires a viable complaint to start its time periods running and that speedy trial considerations do not enter into the case until an effective complaint has been filed. The complaint in this case was unquestionably viable, in fact no subsequent complaint was ever issued. *Johnson*, 487 Pa. at 204, 409 A.2d at 311.

14. In *Johnson*, we noted that "failure [by the Legislature] to enact a statute of limitations for murder 'reflects the felt seriousness of the crime, and thus is indeed a factor to be considered before foreclosing all further prosecution.' " 487 Pa. at 205, n.4, 312 A.2d at 312, n.4.

The result we reach has been followed consistently by the Superior Court[15] and is supported by the relevant provisions of the ABA Standards Relating to Speedy Trial:

2.2. When time commences to run.

The time for trial should commence running, without demand by the defendant, as follows:

. *    *    *    *    *    *

(b) if the charge was dismissed upon motion of the defendant and thereafter the defendant was held to answer or charged with an offense, from the date the defendant was so held to answer or charged, as above. . . .

ABA Project on Minimum Standards for Criminal Justice, Standards Relating to Speedy Trial, § 2.2(b) (Approved Draft, 1968).[16]

So long as there has been no misconduct on the part of the Commonwealth in an effort to evade the fundamental speedy trial rights of an accused, Rule 1100 must be construed in a manner consistent with society's right to punish and deter crime. In considering matters such as that now before us, courts must carefully factor into the ultimate equation not only the prerogatives of the individual accused, but the collective right of the community to vigorous law enforcement as well. Strained and illogical judicial construction adds nothing to our search for justice, but only serves to expand the already bloated arsenal of the unscrupulous criminal determined to manipulate the system. Nei-

15. *See Commonwealth v. Leatherbury,* 269 Pa.Super. 194, 409 A.2d 431 (1979); *Commonwealth v. Brennan,* 264 Pa.Super. 206, 399 A.2d 739 (1979); *Commonwealth v. Finfrock,* 257 Pa.Super. 555, 391 A.2d 621 (1978); *Commonwealth v. Weitkamp,* 255 Pa.Super. 305, 386 A.2d 1014 (1978); *Commonwealth v. Lowe,* 255 Pa.Super. 78, 386 A.2d 144 (1978); *Commonwealth v. Braithwaite,* 253 Pa.Super. 447, 385 A.2d 423 (1978); *Commonwealth v. Mumich,* 239 Pa.Super. 209, 361 A.2d 359 (1978); *but see, Commonwealth v. Garbett,* 256 Pa.Super. 488, 390 A.2d 208 (1978) (plurality).

16. Under the ABA Standards, "the critical distinction . . . is whether the dismissal was at the instance of the prosecutor or the defendant." ABA Project on Minimum Standards for Criminal Justice, Standards Relating to Speedy Trial, § 2.2(b), Commentary (Approved Draft, 1968).

ther the language nor the spirit of Rule 1100 is inconsistent with the logical, common sense conclusion that the 180 days must run from the filing of the second complaint, the one which commenced this prosecution.

Accordingly, we reverse the order of the Court of Common Pleas and remand for trial.

ROBERTS, J., filed a dissenting opinion.

NIX, J., filed a dissenting opinion.

ROBERTS, Justice, dissenting.

For the reasons set forth in the opinion of Chief Justice Eagen in *Commonwealth v. Brocklehurst*, 491 Pa. 151, 420 A.2d 385 (1980) (Eagen, C. J., joined by Roberts & Nix, JJ., dissenting), it must be concluded that this trial was not commenced within the 180-day period permitted under Pa.R. Crim.Proc., 1100(a)(2). Appellee moved to dismiss the charges 271 days after his initial arrest. Even excluding the twenty days between the dismissal of the first complaint and the filing of the second, see *Commonwealth v. Johnson*, 487 Pa. 197, 409 A.2d 308 (1979), trial here would have been untimely.

As Chief Justice Eagen observed, "the cases have consistently attempted to effectuate the policies behind Rule 1100 which include the placing of limitations on 'disruption of employment, curtailment of associations, subjection to public obliquy, and creation of anxiety.'" *Brocklehurst*, supra, 491 Pa. at 159, 420 A.2d at 390. As in *Brocklehurst*, here the majority "[fails] in [its] attempt to effectuate the policy underlying the rule because [it fails] to acknowledge that during the life of the first complaint an accused is confronted with the factors which the rule should limit." Id.

Unlike the approach of the majority here and in *Brocklehurst*, the approach of Chief Justice Eagen does not permit the prosecution to subject the accused to multiple, unsuccessful efforts to initiate charges with impunity. Instead, his approach, which excludes only that period between the dismissal of a first complaint and the filing of a second,

properly gives full effect to the interests embodied in Rule 1100.

Because the interests of Rule 1100 have been frustrated here, the order of the trial court dismissing the charges against appellant should be affirmed.

NIX, Justice, dissenting.

The majority seeks to justify its manipulation of the clear language of the rule and the undermining of its scheme by suggesting they are serving a societal purpose by doing so. This view ignores society's great interest in prompt trial in criminal cases. Even the novice is aware that the most effective weapon in the arsenal of defense lawyers in criminal cases is delay. In most of the blatant instances where the guilty were acquitted, delay was either the sole or a major contributing factor. The prompt trial in criminal cases is in the best interest of the public and decisions undermining that objective are not.

As the majority acknowledges and then ignores, Rule 1100 was drafted to serve this societal interest as well as to protect the accused's constitutional right to a speedy trial, it flowed from a judgment that a presumptive period should be established to avoid the uncertainty created by the test articulated in *Barker v. Wingo*, 407 U.S. 514, 92 S.Ct. 2182, 33 L.Ed.2d 101 (1972). That period was arrived at after input was received from members of the bar throughout the Commonwealth. Consideration was given to the unique problems of the various judicial districts. The attempt to accommodate all legitimate concerns was evidenced by the fact that initially a much longer period was prescribed to permit adjustment to the rule. The period finally arrived at was deemed to be a reasonable time in which to bring a criminal case to trial. Where the trial cannot be commenced, with reasonable diligence, within the prescribed period, the Commonwealth has the option of seeking an extension. There is no limitation on the number of extensions or the length of the extensions. The only requirement is that the Commonwealth must show that it has proceeded

with due diligence. A proper determination of due diligence must take into account factors such as case load and the resources available to the prosecutor. A denial of a petition for extension is subject to appellate review. Here the Commonwealth sought an extension within the prescribed period and was denied the relief sought on the basis that they had failed to establish "due diligence." This decision was not appealed. The Commonwealth had the option of seeking interlocutory review under the authority of *Commonwealth v. Bosurgi*, 411 Pa. 56, 190 A.2d 304 (1963). The Commonwealth elected not to seek review which suggests an implicit concession that they did not exercise "due diligence." Finally, periods of delay attributable to the defense are automatically excluded from the computation. Thus there can be no legitimate excuse for a prosecutor allowing a prosecution to be barred under the provisions of the rule. Nor can such a result occur except where the prosecutor has failed to act with due diligence.[1]

The majority states and I agree, "Strained and illogical judicial construction adds nothing to our search for justice, . . ." (at 371). It is my view that the result reached today is in fact a "strained and illogical judicial construction." The rule states in the clearest possible language that trial must be commenced within the prescribed period starting from the date "in which a written complaint is filed against the defendant." Since there were two complaints filed in the case, the only question presented was which complaint determines the commencement of the presumptive period.

In *Commonwealth v. Johnson*, 487 Pa. 197, 409 A.2d 308 (1979), we attempted to resolve the problems raised in cases where there was a hiatus between the original initiation of the prosecution and the commencement of trial. In *Johnson*

---

1. If there are legitimate objections as to the prescribed time frame, or if it is improper to demand that the prosecution proceed with "due diligence" (recognizing that this term is relative and not absolute), these objections may be aired through the rule-making processes and appropriate modifications can be drafted. We should not attempt to alter the rule on a case-by-case basis or use the decisional process to provide undue allowances for prosecutorial errors.

we were successful in gaining the agreement of six of the seven members of the Court at that time.[2] There we held that only the period during the hiatus should be excluded from the computation. In *Johnson* we further stated:

> . . . Rule 1100 requires a viable complaint to start its time periods running and that speedy trial considerations do not enter into the case until an effective complaint has been filed.

*Id.*, 487 Pa. at 204, 409 A.2d at 311.

The majority seeks to distinguish *Johnson* in this factual situation on the grounds that in *Johnson* there was only one complaint filed. This analysis is in my judgment superficial and ignores the clear meaning of the *Johnson* decision. In this case, we are faced with a rearrest after a determination by the original district justice that there was not a *prima facie case*. There was no allegation that the complaint was defective, in fact the second complaint was identical to the first. Thus the interruption did not occur because of a deficiency in the complaint but rather as the result of an apparently erroneous judgment of the first district justice.[3] The rearrest procedure does not necessarily require the filing of a new complaint. Thus if we accept the majority's attempt to distinguish *Johnson*, we would have to conclude the applicability of the *Johnson* rationale would be dependent upon whether the Commonwealth elected to file a second paper reciting verbatim the contents of the first. Such a trivial basis for determining substantial rights is abhorrent in an enlightened society.[4]

**2.** In a scholarly dissent in *Commonwealth v. Brocklehurst*, 491 Pa. 151, 420 A.2d 385 (1980), then Chief Justice Eagen set forth the conflicts in this area and, after a thorough analysis, embraced the *Johnson* analysis as the most reasonable approach.

**3.** There is no indication that there was any substantial difference in the evidence presented to the two district justices.

**4.** Although I joined the dissent in *Commonwealth v. Brocklehurst*, 491 Pa. 151, 420 A.2d 385 (1980), I would be the first to concede that there was at least an arguable basis for distinguishing it from our opinion in *Johnson*. In *Brocklehurst*, it was the inadequacy of the defect of the first complaint that occasioned the interruption of the

Since there was a viable and effective complaint originally filed in this case, the period of time that complaint was in effect cannot be ignored for purposes of Rule 1100.[5] I would agree that the period between August 22, 1978 and September 11, 1978 was properly excludable under the teaching of *Johnson*. Since the exclusion of this period of time does not satisfy the presumptive period, I must dissent.

prosecution; such was not the case here. My disagreement in *Brocklehurst* was based upon the judgment that the distinction did not deserve the significance given to it.

5. The period extended between March 24, 1978 and August 22, 1978. The second complaint was filed September 11, 1978.