## Commonwealth v. Thrapp

C.P. of Monroe County, no. 415 Criminal 1996.

*Curtis J. Rogers, district attorney,* for the Common-wealth.

*Randolph L. Goldman,* for defendant.

WALLACH MILLER, *J.,* February 12, 1997—The defendant, David M. Thrapp, has been charged with forgery, theft by unlawful taking or disposition, receiving stolen property, and criminal conspiracy along with another defendant, an office manager for a local attorney, alleged to have taken large sums of money from law office accounts. However, the matter we now must consider does not go to the substance of these charges, but to the procedural actions of the prosecution. The defendant has filed a motion to dismiss the case with prejudice for an alleged violation of Pennsylvania Rule of Criminal Procedure 1100, also known as the speedy trial rule.

The acts allegedly committed by the defendant were performed on and between August 1, 1991 and December 16, 1992. On December 13, 1995, the Commonwealth filed a criminal complaint against the defendant. This complaint was signed by then County Detective John Hudson. The defendant was arrested and then released on bond, pending a preliminary hearing scheduled for January 8, 1996, before District Justice Anthony Mangan.

On January 5, 1996, the first assistant district attorney of Monroe County sent a letter to District Justice Mangan telling him that the Commonwealth was withdrawing the charges against Mr. Thrapp. No reason was given for this withdrawal. No hearing was held.

On April 3, 1996, a second criminal complaint was filed against defendant by Stroudsburg Police Sergeant John Baujan. The charges in this complaint are identical to the charges in the first complaint. The preliminary hearing on the second complaint was held May 21, 1996, and all charges were bound over. On December

24, 1996, defendant filed a motion to dismiss under Rule 1100. A hearing on defendant's motion was held on January 3, 1997. At that hearing, the Commonwealth advised the court that the first complaint was withdrawn because "Detective Hudson had left the district attorney's office and there was no one to prosecute the matter."

The applicable provisions of the current Pennsylvania Rule of Criminal Procedure 1100 are:

"RULE 1100. PROMPT TRIAL . . .

"(a)(3) Trial in a court case in which a written complaint is filed against the defendant, where the defendant is at liberty on bail, shall commence no later than 365 days from the date on which the complaint is filed. . . ."

The defendant contends that the 365-day period has expired, and has moved for dismissal of the charges. The prosecution contends that it has not. The issue to be decided is whether the 365-day period begins to run from the filing of the first complaint or the filing of the second complaint. If the timing begins with the first complaint, then the 365-day period would have run on December 13, 1996. Should the second complaint be the proper starting point for the Rule 1100 period, then the Commonwealth has until April 3, 1997 to begin trial of the defendant.

The Commonwealth seemingly as an afterthought also made an alternative "tolling" argument that, should the first complaint be found to be the proper starting point of the Rule 1100 period, the Commonwealth would still have until sometime in March of 1997 to commence trial. The Commonwealth's alternative argument would cause the 365-day period to be "tolled" from January 5, 1996, the withdrawal of the first complaint by the prosecution, until the filing of the second complaint on April 3, 1996. In deciding whether the first or second complaint is the proper starting point of the 365-day

period and, if necessary, whether the Commonwealth's tolling argument has merit, we look to the extensive and sometimes conflicting case law from our appellate courts.

Prior to 1972, there was no Rule 1100, and Pennsylvania used a "two-term" rule to provide for the discharge from imprisonment of any accused who had not been tried during the second court term after his commitment. *Commonwealth v. Hamilton,* 449 Pa. 297, 297 A.2d 127 (1972). In *Hamilton,* the Supreme Court criticized the two-term rule, and suggested a statutory solution to set a specific time period in which a case should be brought to trial. The court also made mention of referring the matter to the Criminal Procedure Rules Committee for study and recommendation. *Id.* at 308-309, 297 A.2d at 133. As a direct result of *Hamilton,* Pa.R.Crim.P. 1100 was adopted by the legislature in 1973.

Three years after *Hamilton,* the Supreme Court made its first relevant ruling on the new Rule 1100 in *Commonwealth v. Whitaker,* 467 Pa. 436, 359 A.2d 174 (1976). *Whitaker* pointed out that the interim Rule 1100 time period would be 270 days, then becoming a regular period of 180 days. The Rule 1100 period was later modified upwards to 365 days for an accused that is not incarcerated. The Supreme Court also denied a tolling of Rule 1100 on a nolle prosequi entered by the prosecution. *Id.* at 439, 359 A.2d at 175. An important distinction from the current case is that only one criminal complaint was involved in *Whitaker.* However, the *Whitaker* court pointed out that to rule otherwise would mean that "[t]hrough the simple expedient of a nolle prosequi, the prosecution could indefinitely delay an accused's trial, thereby frustrating the state[d] objective of Rule 1100, while at the same time, escaping the consequences of its violation." *Id.* at 442, 359 A.2d at 176. *Whitaker* defined a nolle prosequi as "the vol-

untary withdrawal by the prosecuting attorney of present proceedings on a particular bill of indictment." *Id.* at 442, 359 A.2d at 177, citing *Commonwealth v. McLaughlin,* 293 Pa. 218, 142 A. 213 (1928). In recent years, a criminal information has replaced the bill of indictment used in *Whitaker,* and the above definition should, therefore, apply to criminal informations as well.

Another important distinction made by *Whitaker* was its emphasis of former Rule 1100(c), now part of the substance of current Rule 1100(g), as the only legitimate means of extending the Rule 1100 time period.[1] To allow a nolle prosequi to toll the Rule 1100 period would permit an extension without complying with the standard for obtaining an extension. *Id.* at 443, 359 A.2d at 177. *Whitaker* was the first case to deal with the tolling issue, argued alternatively here, and one month after *Whitaker* was handed down by the Supreme Court, the Superior Court ruled in a case involving two complaints.

*Commonwealth v. Mumich,* 239 Pa. Super. 209, 361 A.2d 359 (1976), was the first case in which a violation of Rule 1100 was alleged where the time period had expired if calculated from the filing of the first complaint, but not from a second complaint. In determining the starting point of the Rule 1100 period, the court held that "under these circumstances, especially where no objection was voiced, we are satisfied that the magistrate acted within his discretion in dismissing the complaint and discharging appellant. . . . We read Rule 1100 on prompt trial as applying to complaints properly filed and not to defective complaints that are dismissed." *Id.* at 213, 361 A.2d at 361.

---

1. In *Thrapp,* the Commonwealth is not seeking to extend the Rule 1100 period beyond 365 days, but is arguing that the initial 365 days has not yet expired.

The court allowed the Rule 1100 period to run from the second complaint when the first complaint was (a) defective and (b) dismissed. Otherwise, the period would run from the first complaint. See also, *Criminal Procedure—Entry of Nolle Prosequi Does Not Toll Speedy Trial Period Specified by Pennsylvania Rule of Criminal Procedure 1100,* 81 Dick. L. Rev. 387, 393 (1977).

Nine months after *Mumich,* our Supreme Court briefly returned to the Rule 1100 issue. *Commonwealth v. Mitchell,* 472 Pa. 553, 372 A.2d 826 (1977), held that the Rule 1100 period runs from the date the complaint is filed. The Commonwealth's argument that the preliminary arraignment was the start of the Rule 1100 period was dismissed as the Supreme Court recognized that police officers act as "prosecutorial officers" when they file a criminal complaint. See *Mitchell, supra* at 562, 372 A.2d at 829-30. This case confirmed that the filing of the complaint is the proper starting point of the Rule 1100 period. However, in cases with two or more complaints, the question of which complaint is "the" complaint was not addressed. This meant, pending further direction from the appellate courts, that the only law Pennsylvania trial courts had to guide them on this issue was *Mumich,* if they chose to use it. This issue spawned a number of law review articles at this time, including the following:

"The question a court must resolve is whether to count from the initial complaint or to start anew when the charges are lodged again. This situation is far different from those cases in which the Commonwealth withdraws a prosecution—nolle prosequi—only to attempt to reinstate the same prosecution. Both this withdrawal and the reinstatement must be done with court approval. In these situations, as in *Mumich,* if the defendant fails to object to the dismissal of charges and demand a speedy trial, the defendant could be considered to have waived his speedy trial rights.

"The American Bar Association Project on Standards for Criminal Justice (ABA Standards) includes a section entitled 'When time commences to run' which states:

"The time for trial should commence running, without demand by the defendant, as follows: . . .

"(b) if the charge was dismissed upon motion of the defendant and thereafter the defendant was held to answer or charged with an offense, from the date the defendant was so held to answer or charged as above. . . .

"This would indicate that the preferred method would be to start the clock running at the time of filing of the second charge. A study comparing Pennsylvania law and practice to these ABA Standards, found no comparable provision in Pennsylvania criminal procedure rules, and the comment to that study recommended promulgation of such a rule. In this vacuum, most trial courts faced with the problem, wherever possible and out of an abundance of caution, have given a literal reading to Rule 1100(a) and started the Rule 1100 clock running from the first complaint." M. Marshall and J. Reiter, *A Trial Court Working with Rule 1100,* 23 Vill. L. Rev. 284, 293-94 (1978).

One year after the Supreme Court handed down the *Mitchell* decision, the Superior Court again faced the two-complaint issue first addressed in *Mumich.* Our Superior Court handed down two decisions that were 15 days apart; first, *Commonwealth v. Braithwaite,* 253 Pa. Super. 447, 385 A.2d 423 (1978), and then *Commonwealth v. Weitkamp,* 255 Pa. Super. 305, 386 A.2d 1014 (1978), *alloc. denied.* In *Braithwaite,* the court cites to *Mumich* for the proposition that "the prescribed period of Rule 1100 commenced with the filing of a subsequent complaint when an initial complaint had been properly dismissed by a magistrate." *Id.* at 450, 385 A.2d at 424. According to *Braithwaite, Mumich* should be tempered by "the recognition that the prompt

trial period would attach from the date of the second complaint only if (1) the first complaint was properly dismissed *and* (2) the record fails to reflect an improper prosecutorial design to circumvent the mandate of Rule 1100." *Id.* at 450, 385 A.2d at 424-25. The second footnote also distinguishes *Braithwaite* from *Whitaker:* "In *Whitaker* . . . the nolle prosequi . . . was simply an effort to gain an extension of the time period during which it was required to bring appellee to trial. . . . No such effort on the part of the prosecution [in *Braithwaite*] is apparent." *Id.* at 450 n.2, 385 A.2d at 425 n.2. (citation omitted) Judge Spaeth also wrote a critical dissent in *Braithwaite* challenging the reasoning behind the "new" two-prong test.

Fifteen days after the ruling on *Braithwaite,* our Superior Court issued *Weitkamp.* In *Weitkamp,* a complaint was filed, and a preliminary hearing held. The witnesses for the Commonwealth refused to testify, no evidence was brought forth and the complaint was dismissed by the district justice. A second complaint was filed nine months later or 10 months after the first complaint had been filed. Appellant was indicted by the grand jury, and asserted that the Rule 1100 period should run from the first complaint and all charges should be discharged.

Citing to *Mumich,* the *Weitkamp* court set out a "principal factors" test in deciding which complaint was the starting point for the Rule 1100 period: "(1) the failure of the defendant or his attorney to object to the dismissal of the complaint because of the defect was interpreted as an acquiescence in the procedure followed by the magistrate; and (2) the record did not reflect any deliberate attempt by the district attorney's office to avoid the mandate of the rule." *Id.* at 342, 386 A.2d at 1033. Footnote 12 distinguishes *Whitaker,* which involved a nolle prosequi that was a blatant attempt to avoid Rule 1100, and *Weitkamp,* which did

not involve any deliberate attempts by the prosecution to avoid Rule 1100. *Id.*

*Weitkamp* and *Braithwaite* were heard by the same en banc court, 15 days apart. *Braithwaite* would require a proper dismissal, while *Weitkamp* would require a protest of the dismissal by the defendant. However, both cases agree that intent on the prosecution's part is part of the test.

Our Supreme Court briefly revisited the issue in *Commonwealth v. Cartagena,* 482 Pa. 6, 393 A.2d 350 (1978). In *Cartagena,* appellant was arrested, and a complaint was filed on May 31, 1975. On June 13, 1975, the court dismissed all charges at the preliminary hearing for failure of the Commonwealth to establish a prima facie case. The second complaint was filed on June 16, 1975, and the *Cartegena* court found that it was the second complaint from which the Rule 1100 period must run. *Id.* at 19, 393 A.2d at 357. The *Cartagena* rule, a plurality opinion, meant that if a prima facie case was not made out, then the second complaint would be the starting point for Rule 1100.

Five months later, *Commonwealth v. Brennan,* 264 Pa. Super. 206, 399 A.2d 739 (1979) arrived on the scene. *Brennan* set the foundation for the current Rule 1100. *Brennan* cites to *Whitaker* for the proposition that a withdrawal or a nolle prosequi will not toll Rule 1100. The *Brennan* court defined the difference between an actual nolle prosequi and a prosecutorial withdrawal of charges before a district justice:

"The Supreme Court stated in *Whitaker* that a 'nolle prosequi is the voluntary withdrawal by the prosecuting attorney of present proceedings on a particular bill of indictment,' 467 Pa. at 442, 359 A.2d at 177. Pa.R.Crim.P. 151 provides for a similar procedure before a district justice, and we see no reason not to apply the principles of *Whitaker* to this situation, if the first complaint was in fact withdrawn." *Id.* at 209 n.2, 399 A.2d at 740 n.2.

*Brennan* then cites to *Braithwaite* for the rule that a dismissal requires the application of a two-prong test, and that the dismissal may be for technical or substantive reasons. *Mumich* was also cited for support on the second rule. *Weitkamp* is not considered. Thus, the *Brennan* test is set forth as:

"The prompt trial period would attach from the date of the second complaint only if (1) the first complaint was properly dismissed and (2) the record fails to reflect an improper prosecutorial design to circumvent the mandate of Rule 1100." *Id.* at 209-210, 399 A.2d at 740, citing to *Braithwaite, supra at 450, 385 A.2d at 424-25.*

This, of course, begs the question of just what constitutes "properly dismissed," a question that was not addressed in *Braithwaite,* but is answered in *Brennan*:

" 'Proper dismissal' we understand to mean that proceedings on the charges contained in the complaint were dismissed by a competent magisterial or judicial authority who committed no error of law in doing so. . . . This would include, we think, dismissal for failure to make out a prima facie case." *Id.* at 210, 399 A.2d at 741, citing to *Braithwaite, supra;* M. Marshall and J. Reiter, *A Trial Court Working with Rule 1100,* 23 Vill. L. Rev. 284, 293 n.71 and accompanying text.

The *Brennan* court also points out that "[w]e think it unrealistic, however, to expect the defendant or his attorney to object to dismissal of charges." *Id.* at 210 n.5, 399 A.2d at 741 n.5. The importance of *Weitkamp,* and the objection factor it espouses, is diminished in light of this footnote from *Brennan. Brennan* solidified the two-prong test from *Braithwaite,* and then put forth a definition of proper dismissal, the first prong of the *Braithwaite-Brennan* test, that is still the standard. Seven months later, however, the Supreme Court returned to the Rule 1100 issue in *Commonwealth v. Johnson,* 487 Pa. 197, 409 A.2d 308 (1979).

The Supreme Court distinguished *Weitkamp* and *Mumich* from the *Johnson* facts, in that the termination of the proceeding in *Johnson* was not at the request or instigation of the prosecutor. The prosecutor was involved in *Whitaker,* which was cited by *Mumich* and *Weitkamp.* In addressing the argument that the holding of *Whitaker* should be applicable such that the Rule 1100 period would not be tolled by a nolle prosequi, the *Johnson* court held that:

"We disagree and believe *Whitaker* is limited to where there is an obvious attempt to evade the requirements of Rule 1100(c) through the use of the nolle prosequi procedure. Here, of course, the termination of the proceeding was not at the request or instigation of the prosecutor, as was the situation in *Whitaker.*" *Id.* at 203-204, 409 A.2d at 311.

While *Whitaker* appeared to eliminate tolling as a possibility, *Johnson* made it the norm, except in cases where the second prong of the *Braithwaite-Brennan* test, regarding the prosecution's attempts to circumvent Rule 1100, applied. The Supreme Court backtracked on this holding, however, 11 months later in *Commonwealth v. Brocklehurst,* 491 Pa. 151, 420 A.2d 385 (1980).

In *Brocklehurst,* the Supreme Court, while citing to *Whitaker,* allowed the Rule 1100 period to run from the second complaint, rather than the first one. The court so ruled because no prosecutorial attempt to circumvent Rule 1100 was shown. *Id.* at 155, 420 A.2d at 387-88. No mention was made of the first prong of the Superior Court's *Braithwaite-Brennan* test, concerning the proper dismissal of the complaint. However, there was a well-reasoned dissent by Chief Justice Eagen, joined in by Justices Roberts and Nix, that cited to the rationale put forward in *Johnson.* Four months later, our Superior Court clarified its test in *Commonwealth v. Sires,* 284 Pa. Super. 50, 424 A.2d 1386 (1981).

*Sires* cited *Mumich* and *Braithwaite* for the proper test to determine if the Rule 1100 period commences from the filing of a subsequent complaint: "(1) if the first complaint was properly dismissed; and (2) whether the prosecution attempted to avoid Rule 1100's mandate. . . ." *Id.* at 51, 424 A.2d at 1387. *Sires* seemed to clarify the test. But a month later, our Supreme Court jumped again into the ever-zigzagging rulings of Rule 1100.

*Commonwealth v. Genovese,* 493 Pa. 65, 425 A.2d 367 (1981) was a murder case that involved the filing of two separate complaints. The *Genovese* court followed the reasoning from *Brocklehurst* and ignored the first prong of the Superior Court's *Braithwaite-Brennan* test. *Genovese* also cites the plurality opinion of *Cartagena* as controlling authority.

"It is thus clear from the record that appellee was not discharged at the preliminary hearing at the request or instigation of the prosecutor, but only because the Commonwealth failed to persuade the district justice that it had presented a prima facie case. There is no evidence of any attempt by the Commonwealth to evade the mandate of Rule 1100. *Id.* at 68, 425 A.2d at 369.

"In *Commonwealth v. Cartagena,* 482 Pa. 6, 393 A.2d 350 (1978), this court was confronted with the very issue now before us, and we expressly held that the 180-day period commences from the filing of a second complaint. In *Cartagena,* as here, *all* charges against the defendant were dismissed at the preliminary hearing for lack of a prima facie case and the defendant was discharged. . . . As in *Cartagena, supra,* 'the second complaint . . . was the one which commenced this prosecution,' 482 Pa. at 19, 343 A.2d at 357, and there is no evidence of a prosecutorial plan to avoid the mandate or the rule." *Id.* at 70-71, 425 A.2d at 370.

Once again, the Supreme Court omitted the first prong of the test without expressly overruling it. The Supreme

Court, in fact, even found that they were following the Superior Court's line of cases. See *id.* at 72 n.15, 425 A.2d at 371 n.15.

Not to be outdone, our Superior Court filed *Commonwealth v. Ardolino,* 304 Pa. Super. 268, 450 A.2d 674 (1982), adding some significant points to the Rule 1100 debate. *Ardolino* cites to *Mumich* for the two-prong test: if "(1) the earlier complaint was properly dismissed, and (2) the record does not reveal evidence of a prosecution attempt to circumvent Rule 1100," then the applicable period "under Rule 1100(a)(2) begins to run anew with the filing of a subsequent complaint after the dismissal of the initial one." *Id.* at 273, 450 A.2d at 677. Footnote five correctly points out that *Genovese* cited the Superior Court cases with approval. *Id.* at 274 n.5, 450 A.2d at 677 n.5. *Ardolino* also makes reference to *Brennan* on the tolling issue, pointing out that even though *Brennan's* dictum states "that *Whitaker* stands for the proposition that the entry of an order of nolle prosequi upon motion of the prosecution does not toll the running of Rule 1100, no case has so held." *Ardolino, supra* at 274, 450 A.2d at 678. (footnote omitted) *Ardolino* goes on to cite to *Sires* and *Brennan* for the two-prong test, and the definition of a proper dismissal. Three months after *Ardolino,* the Supreme Court took up the specific issue of tolling.

In *Commonwealth v. Navarro,* 499 Pa. 279, 453 A.2d 308 (1982), the Supreme Court circumvents the anti-tolling aspects of *Whitaker* by citing to the apparent limitations placed on that line of reasoning by the ruling in *Johnson.*

"Here, as in *Johnson,* it must be concluded that the Commonwealth's withdrawal of the assault charges against appellant effectively terminated those charges. Accordingly, the 180-day period was tolled on the date of withdrawal, November 21, 1977, 34 days after the prosecution had been commenced." *Navarro, supra* at 281, 453 A.2d at 309.

Twenty days later, the Supreme Court handed down *Commonwealth v. Leatherbury,* 499 Pa. 450, 453 A.2d 957 (1982). Citing to *Johnson,* and the 20-day-old *Navarro, Leatherbury* held,

"Since the Superior Court's decision in the present case, this court has held that Rule 1100 should be tolled between the dismissal of a first complaint and the filing of a second complaint, except where 'there is an obvious attempt to evade the requirements of Rule 1100(c) (governing applications of the Commonwealth for extensions of time) through the use of the nolle prosequi procedure.' " *Id.* at 453, 453 A.2d at 958. (citations omitted)

*Leatherbury* now established a rule that permitted the tolling of the Rule 1100 period; a rule that would be refined later by the Superior Court in *Commonwealth v. Sweeney,* 376 Pa. Super. 476, 546 A.2d 624 (1988), *allocatur denied,* 521 Pa. 620, 557 A.2d 723 (1989). *Sweeney* is the final case in the line of Pennsylvania appellate opinions dealing directly with the tolling issue. Prior to analyzing *Sweeney,* however, we need to look at several more cases because our appellate courts weren't quite finished.

*Commonwealth v. McClain,* 325 Pa. Super. 29, 472 A.2d 630 (1984), repeats the two-prong test of *Braithwaite-Brennan,* as well as the definition of a proper dismissal. *McClain* applies the test, and cites to *Genovese* and *Cartagena* as supporting authority in allowing the Rule 1100 period to run from the second complaint.

The importance of *McClain* is not its outcome, but the court's reasoning. McClain applied the *Braithwaite-Brennan* test, and found there to be a proper dismissal, as well as no attempt by the Commonwealth to circumvent the mandate of Rule 1100. See *McClain, supra.* Only then did the court find that the Rule 1100 time period ran from the second complaint. The Superior Court followed its position in *Commonwealth v. Davies,* 342 Pa. Super. 318, 492 A.2d 1139 (1985), coming

one year after *McClain. Davies* cited to *Mumich* and *Braithwaite* for the proposition that the Rule 1100 time period runs from a subsequent complaint when "two prerequisites [have been] met: (1) the first complaint had been properly dismissed, and (2) the record did not disclose evidence on the part of the Commonwealth to circumvent Rule 1100." *Id.* at 322, 492 A.2d at 1141. The Superior Court, yet again, confirmed the two-prong test of *Braithwaite-Brennan* as the standard in Rule 1100 cases. This paved the way for Rule 1100 to make one last return to the Supreme Court regarding which complaint most properly starts the timing of the Rule 1100 period.

In November of 1985, the Supreme Court of Pennsylvania handed down two cases, nine days apart, on the timing of the Rule 1100 period. *Commonwealth v. Simms,* 509 Pa. 11, 500 A.2d 801 (1985), and *Commonwealth v. Whiting,* 509 Pa. 20, 500 A.2d 806 (1985). These are the Supreme Court's most recent applicable opinions on the timing of Rule 1100, even though they are over 11 years old. *Simms* validated the two-pronged test of the Superior Court, as restated in *Ardolino.* The court also cited to *Sires* with approval. However, in *Simms,* the second complaint was not identical to the first complaint, so the *Simms* court held the two-prong rule to be inapplicable, and the Rule 1100 period was held to run from the second complaint. *Id.* at 14, 500 A.2d at 802. *Whiting* mentioned the holdings from *Whitaker* and *Brennan,* but then discounted them based on *Johnson. Whiting* then, based on a close reading of the opinion, appears to overrule the first prong of the *Braithwaite-Brennan* test, which requires a proper dismissal. The first prong was not mentioned directly, however, leaving some room for doubt as to the Supreme Court's intentions.

"Thus, where a prosecution is voluntarily terminated, and the record shows an attempt to manipulate or evade

the requirements of Rule 1100, the speedy trial time period will be computed from the date of the original complaint. But where the record does not show that the Commonwealth's termination of the prosecution was designed to manipulate or evade the requirements of Rule 1100, the time for computing the speedy trial period runs from the date of the later complaint." *Id.* at 24, 500 A.2d at 808.

If the above passage from *Commonwealth v. Whiting* were the test to be applied here, there would be no question that the time period would run from the second complaint. However, despite the use of withdrawal language in parts of the opinion, *Whiting's* facts involve a case that contained a proper dismissal. The fact that there was a proper dismissal in *Whiting* could explain why this prong of the *Braithwaite-Brennan* test was not mentioned in the above passage, despite the fact that the Supreme Court itself cited to *Sires,* and the two-prong test, with approval just nine days earlier in *Simms.* Finally, the holdings of subsequent cases of the Superior Court, to be discussed shortly, and the fact that *Braithwaite-Brennan* was not expressly overruled in *Whiting,* lead us to believe that the two-prong test is still the standard to be applied with regard to the timing of the Rule 1100 period.

The last four cases to deal with the timing of Rule 1100, handed down from 1988 to 1995, are from our Superior Court. The first case, *Commonwealth v. Sweeney, supra,* finally deals definitively with the tolling issue and sets out the following standard:

"We find further support for our decision in *Commonwealth v. Navarro,* 499 Pa. 279, 453 A.2d 308 (1982), in which the Commonwealth withdrew the complaint 34 days after filing the charges, and filed a second complaint 115 days later. The Supreme Court held that,

absent an obvious attempt by the Commonwealth to avoid the requirements of Rule 1100, the withdrawal of the complaint by the Commonwealth effectively terminates the charges. As there was no evidence on the record that the Commonwealth was attempting to avoid the requirements of Rule 1100, the 180-day period was tolled as of the date the complaint was withdrawn." *Id.* at 484, 546 A.2d at 628.

The Supreme Court in *Navarro,* and the Superior Court in *Sweeney,* both recognize the above rule to be the standard on tolling of the Rule 1100 period, at least in cases where the Commonwealth withdraws the charges. We need to return to this analysis shortly.

*Commonwealth v. Gehman,* 381 Pa. Super. 244, 553 A.2d 447 (1989); *Commonwealth v. Schafer,* 394 Pa. Super. 493, 576 A.2d 392 (1990), and *Commonwealth v. Braykovich,* 444 Pa. Super. 397, 664 A.2d 133 (1995), *allocatur denied,* 544 Pa. 622, 675 A.2d 1242 (1996), define the current state of the law with regard to the initial timing of the Rule 1100 period in cases involving multiple complaints. *Gehman* cites to the Supreme Court in *Simms* in explaining that:

"When an initial complaint has been withdrawn or otherwise dismissed, the 180-day period begins to run anew with the filing of a subsequent complaint only if (1) the earlier complaint was properly dismissed by a competent magisterial or judicial authority, and (2) the record does not reveal evidence of a prosecution attempt to circumvent Rule 1100." *Gehman, supra* at 247, 553 A.2d at 449, citing *Simms, supra* at 15, 500 A.2d at 803.

The reaffirmation of the two-prong rule in *Gehman* is followed 16 months later by *Schafer,* and *Schafer* explains the questions raised by the Supreme Court in *Whiting.*

"In *Commonwealth v. Whiting,* 509 Pa. 20, 500 A.2d 806 (1985), the Pennsylvania Supreme Court was confronted with a situation where the Commonwealth moved to dismiss the original complaint against the defendant. Subsequently, a second complaint was filed against the defendant. The issue in *Whiting* was how to compute time under Rule 1100 where *the magistrate dismissed the complaint* against the defendant pursuant to the Commonwealth's motion to dismiss." *Schafer, supra* at 499, 576 A.2d at 395. (emphasis added)

*Schafer* proves that the proper dismissal prong of the two-prong test was not eliminated in *Whiting,* despite the language which seemed to so indicate. The first prong was merely taken as a given in *Whiting* because a proper dismissal had taken place. Any confusion probably resulted because the *Whiting* court framed its language in terms of withdrawal when a dismissal is what the facts of the case actually indicate. Furthermore, the Supreme Court denied allocatur in *Schafer,* 527 Pa. 644, 593 A.2d 417. However, any remaining doubts are dispelled in *Braykovich*, which cites to *Simms* and *Schafer* in restating the two-prong test:

"When an initial complaint has been withdrawn or otherwise dismissed, the 180-day period begins to run anew with the filing of a subsequent complaint only if (1) the earlier complaint was properly dismissed by a competent magisterial or judicial authority, and (2) the record does not reveal evidence of a prosecution attempt to circumvent Rule 1100." *Braykovich, supra* at 410, 664 A.2d at 139.

The above passage from *Braykovich* we believe to be the correct standard for us to apply in this case. We come to this conclusion after our detailed examination of Rule 1100's tortured history.

Applying the two-prong test from *Braykovich* to the facts currently before the court forces us to conclude that the Rule 1100 period began to run with the filing of the first complaint on December 13, 1995. This is true because the first prong, proper dismissal by judicial authority, has not been met. The complaint was not properly dismissed by judicial authority, it was withdrawn by the prosecution. The evolution of Rule 1100, from *Hamilton* to *Braykovich,* makes it clear that such a withdrawal is not a proper dismissal. Thus, absent any exclusions from the Rule 1100 period, the 365 day period would have run on December 13, 1996. However, we now turn to the Commonwealth's alternative tolling argument, and the standard articulated in *Sweeney.*

Application of the rule from *Sweeney* leads to the conclusion that the Rule 1100 period, which began with the filing of the first complaint, was tolled from the withdrawal of the first complaint on January 5, 1996 until the filing of the second complaint on April 3, 1996. We reach this conclusion because the *Sweeney* test does not require a proper dismissal for the Rule 1100 period to toll. The only requirement is an absence on the record of any attempt by the Commonwealth to avoid the requirements of Rule 1100. The Commonwealth may have been sloppy in its handling of the case, but we find no authority that disorganization rises to the level of a planned avoidance of the Rule 1100 requirement. From January 5, 1996, until April 3, 1996, is a period of 90 days. Therefore, barring exclusions for other reasons, the 365 day Rule 1100 period will expire 90 days after December 13, 1996, or March 13, 1997.

While the twists and turns of Rule 1100 have seemingly diluted its original purpose, it is what we as trial

courts have to guide us. We could, however, conclude that the exceptions have become the rule.

## ORDER

And now, February 12, 1997, defendant's motion for dismissal under Pennsylvania Rule of Criminal Procedure 1100 is denied. Trial shall commence on March 4, 1997 or as soon thereafter during the March criminal trial term as the court is available to preside.